LIVERPOOL & LONDON & GLOBE INS. CO., LTD. v. OTIS ELEVATOR CO.

No. 5878.

United States Court of Appeals Fourth Circuit.

Argued June 27, 1949.

Decided July 28, 1949.

Charles McCamic and Wayne T. Brooks, Wheeling, W. Va. (Frank A. O'Brien, O'Brien & O'Brien, and McCamic & Clarke, Wheeling, W. Va., on the brief), for appellant.

Carl G. Bachmann and Joseph R. Curl, Wheeling, W. Va. (J. Donald Ezell, Wheeling, W. Va., on the brief), for appellee.

Before PARKER, SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

On December 2, 1947, Wheeling Steel Corporation suffered a fire loss in its plant at Wheeling, West Virginia, in the sum of $79,440.80, which was paid by Liverpool & London & Globe Insurance Co., Ltd., under a policy of insurance covering the plant. The fire occurred while Otis Elevator Company was making repairs to an elevator in the plant under a contract with Wheeling, and the Insurance Company, claiming that the fire was caused by the negligent manner in which Otis did the work, brought this suit as the subrogee of the Steel Corporation. The case was submited to a jury and both parties offered a prayer for directed verdict, but these were denied and the jury found for the defendant. The plaintiff appealed contending that the judge erred in not directing a verdict in its favor and in certain instructions contained in the charge to the jury.

The case turns on the nature of the work that was in progress when the fire occurred, and especially upon the relationship of the contracting parties to the work, since the Insurance Company sues in its character as subrogee, and can assert against Otis only such right as Wheeling possessed, so that if Wheeling had no right of action against Otis, none passed to the Insurance Company. St. Louis, I. M. & S. Ry. Co. v. Commercial Union Ins. Co., 139 U.S. 223, 235, 11 S.Ct. 554, 35 L.Ed. 154.

The contract was contained in an interchange of letters in which it was agreed that Otis should make certain changes and repairs to the elevator for $1715 and that Otis' men should have uninterrupted use of the elevator during the work; but the contract provided that Wheeling should furnish certain material for the job and should do all the "cutting with torch, welding, drilling, etc. required in the removal of old material and installation of the new material." In the proposal of Otis, there was a reference to provisions printed on the back of the page to the effect that Otis would not be liable for any loss from a number of causes, including fire. Wheeling's acceptance reiterated the description of the work to be done by each party, but did not include the exculpatory clauses.

The quoted provision of the contract as to welding was all important, since it furnishes the key to the problem to be solved. For the execution of the work on the elevator, Otis furnished two men, Helfenbine, a superintendent, and Wolfe, his assistant, and Wheeling furnished Kryah, a welder. Kryah brought to the job the tools of his trade and three fire extinguishers supplied by Wheeling. The operation of welding produces sparks and fire prevention is recognized as part of a welder's duty. On this occasion each man took a fire extinguisher. Kryah sprayed the walls of the elevator shaft with pyrene, and Wolfe sprayed the floor of the cage, but fire curtains or spark arresters were not used, although they should have been used, according to uncontradicted expert testimony, in order to prevent the escape of sparks from the shaft into the adjoining rooms of the building through perforations in the metal partitions or doors which gave access to the shaft.

A short time before the fire broke out, Wolfe was inside the cage so as to move it up and down when required in the progress of the work. He had a fire extinguisher and was told to look out for sparks. The floor of the car at that time was level with the third floor of the building. Helfenbine and Kryah, each armed with a fire extinguisher, were standing on top of the cage. Helfenbine instructed Kryah where to weld but Kryah himself decided when to perform the operation and how to perform it, selecting the pressure and size of the tip to be used. When the welding started, sparks as usual were emitted, but Wolfe noticed no sparks coming into the car or falling between the car and the shaft. Nevertheless, a short time after the welding started, Wolfe discovered smoke and when the car was lowered to the mezzanine floor between the first and second floors, a raging fire was discovered in a room on the mezzanine adjoining the shaft near a pile of synthetic rubber which was stored in burlap sacks. This was the origin of the fire which caused the substantial damage referred to.

Upon this testimony, the Insurance Company contends that a verdict in its favor should have been directed. Since no explanation of the cause of the fire other than the sparks from the welding operation was offered, it is argued that the judge should not have left to the jury to decide whether the welding caused the fire; and since the evidence of negligence in the failure to use fire curtains was not controverted, and Otis was an independent contractor whose men were in charge of the elevator at the time, it is contended that Otis should have been held liable for the loss.

This line of argument, however, ignores the patent fact that Wheeling, and not Otis, was primarily responsible for the welding, and actually performed it. Wheeling furnished one of its skilled employees as the welder, supplied the welding equipment and all the means of fire prevention which were used, inadequate though they were; and the welder actually did the work in his own way and was subject to the control of Otis only as to what welding should be done. If we assume, in the absence of any other explanation, that the welding caused the fire, it is obvious that the major part, if not all of the blame must fall upon Wheeling since it agreed to do the work and actually performed it in a negligent manner. It is too clear for argument, under the undisputed facts, that the welding operation was Wheeling's work and that Kryah remained Wheeling's employee in the performance of the work, and that this relationship was not changed so as to relieve Wheeling of responsibility for Kryah's action by the mere fact that Otis pointed out the work to be done. He remained the employee of Wheeling in the performance of the work which Wheeling had contracted to do. See Standard Oil Co. v. Anderson, 212 U.S. 215, 29 S.Ct. 252, 53 L.Ed. 480; Restatement of Agency, §§ 220, 227.

The strongest statement that can be made as to the liability of Otis is that it should share the blame for the catastrophe, since it had charge of the repair work which could not be done without the welding operation, had possession of the place in which the welding was done, ordered the operation to proceed, and participated in the faulty fire protection procedure; or in other words, that Otis and Wheeling both contributed to the negligence which caused the loss. Thus it is plain, looking at the case in the aspect most favorable to the Insurance Company, that Wheeling, because of its

contributory negligence, had no right of action against Otis for the damage to the building, and hence the Insurance Company, which stands in Wheeling's shoes, cannot prevail in its action. The uncontradicted facts created such a situation that the prayer of Otis for a directed verdict in its favor might well have been granted. Having reached this conclusion, it is unnecessary to consider the contentions of the plaintiff that the judge should have instructed the jury more fully as to the respective obligations of Otis and Wheeling under the contract between them.

Affirmed.