## HALLIBURTON OIL WELL CEMENTING CO. et al. v. PAULK et al.

### No. 12902.

United States Court of Appeals
Fifth Circuit.
Feb. 16, 1950.
Rehearing Denied March 31, 1950.

Ben Connally, Houston, Tex., Newton Gresham, Houston, Tex., for appellant.

William E. Junell, Houston, Tex., Paul A. Taylor, Houston, Tex., for appellee.

Before HUTCHESON, Chief Judge, RUSSELL, Circuit Judge, and DOOLEY, District Judge.

RUSSELL, Circuit Judge.

This appeal, following a trial in which the complainant was awarded damages for personal injuries, involves questions of the employment status, and consequent liability for his acts, of the person whose negligence was found to have been the proximate cause of the injury.

Complainant Paulk was in the general employ of the Starrett Tubing Pulling Company with whom Francitas Gas Company (hereinafter referred to as Francitas), had orally contracted to rework one of its wells on the Broughton Farm Lease in Jackson County, Texas, and was one of the members of the crew and equipment sent by Starrett to do the contracted job of reworking. This job was done under the general supervision of McDowell, who was Francitas' Field Superintendent. The crew, consisting of a tool puller, a driller and three roughnecks, and the equipment, a light drilling rig and the small tools necessary to operate it, was rented by Francitas on the basis of $15.00 an hour, and was to be used by McDowell as he saw fit in the reworking operations. During the course of the operations it became necessary to do what is known as a "squeeze job." This is shown to be a highly specialized operation requiring expensive, specially made, and in some instances, patented equipment, which requires for its operation the services of technical and skilled operators, so much so, that at the time Halliburton Oil Well Cementing Company (hereinafter referred to as Halliburton), was the only concern in the territory equipped to do this job. McDowell requested Halliburton to send to the well site its equipment and crew, and this was done. The equipment consisted of a specially constructed Halliburton truck equipped with its pump and connections, squeeze tool and manifold. This latter is a specially constructed device consisting of a series of pipes, connections, valves and gauges, the purpose of which apparently is to contain and control the extremely high air pressure built up by the high pressure pump on the truck, and by means of which the pressure desired inside the well may be controlled. Attached to the manifold are two lines, one from the bleed off valve, and the other with a valve for bleeding back into the air tank. The hose attached to the bleed off valve was one and one half inches in diameter, having attached to the end a metal nozzle. It was this hose which injured the complainant as the result of what was found to be Harvey's negligence in opening the bleed off valve too rapidly while subject to some 2400 pounds pressure when the hose was not properly held upon the ground by means of a safety chain.

Following their general custom, upon arrival at the well site, Halliburton's crew placed the truck and equipment in such position and arrangement as they thought best and proceeded to the execution of the job to be done through the employment of Halliburton's specialized equipment, operated by the specialized Halliburton employees. This knowledge and skill is not possessed by others not so especially trained, not even those skilled and experienced in oil well work in general. McDowell, Francitas' Field Superintendent, even though a skilled oil field man of many years, could not operate the equipment and had never been in charge or control of it on any of the jobs he had done in many years of work in the oil fields. His sole direction and control was to give the depth and pressure he wanted on the well. This is in accordance with the general practice and is all Halliburton has to know. "He just tells what he wants done and then Halliburton proceeds with the job." To accomplish the desired results, McDowell understood that the Halliburton men were supposed to do what he told them, but as to telling them how to do it, "Halliburton's men are supposed to be specialists on their job." He "turned the job over to them." Others testified that after the Halliburton truck arrived, Starrett's employees "had nothing to do" and "just stood by."

Prior to beginning the work, Halliburton's employee, Harvey, in accordance with the unvarying custom, required McDowell to sign a written work order authorizing the work, and upon the completion of the job to sign another portion thereof. The material terms of the work order are set out in the footnote.[1]

The complainant Paulk predicated his suit upon the claim that both Halliburton and Francitas had the oil well cement truck and equipment in their exclusive control, and that it was being operated by Harvey, the agent and employee of both defendants. Halliburton defended upon the ground that the equipment was not in its custody or control but was under the exclusive control of Francitas, and likewise that Harvey was the employee of Francitas at the time of his alleged negligence. Francitas contended that the equipment was under the control of Halliburton, as was also the employee, Harvey; that its agent McDowell gave only general instructions to Harvey as to the depth of the well, the depth to which the Halliburton tool was to be lowered therein, and the maximum pressure to be placed upon the well, but gave no detailed instructions, and that Harvey was in full and complete charge of the operation; and that under the agreement between Halliburton and Francitas, McDowell was not authorized to direct the manner in

1. "Conditions: It is expressly understood and agreed that the above described work shall be done under the exclusive control, direction and supervision of the owner or contractor.

"As a part of the consideration for this agreement, it is expressly understood and agreed, that Halliburton Oil Well Cementing Company shall not be responsible for damages or losses of any kind whatsoever occasioned by or incident to the use of the above described cementer, whether run or operated by customer or by any one employed directly or indirectly by Halliburton Oil Well Cementing Company, or whether resulting from the acts or omissions of Halliburton Oil Well Cementing Company, or any of its agents, servants or employees in any way connected with or related to the use of such cementer.

"It is expressly understood and agreed that Halliburton Oil Well Cementing Company shall not be bound by any

agreement not contained herein, and no agent or representative connected with or employed by Halliburton Oil Well Cementing Company has authority to alter or extend the terms of this agreement.

\* \* \* \* \* \* \*

"(This order to be signed before work is commenced)

· "Company Francitas
"By H. W. McDowell

\* \* \* \* \* \* \*

"To Be Filled Out After Job Is Completed

\* \* \* \* \* \* \*

"Total Chg. 176.00

\* \* \* \* \* \* \*

"Remarks

"The above job was done under the exclusive control, direction and supervision of the Owner, Operator or his Agent whose signature appears here below.

"H. W. McDowell
"Agent of Owner or Contractor"

which the work was to be performed, and that Halliburton was an independent contractor. In the alternative, Francitas plead that if it should be determined that Harvey, under the circumstances, was its special employee, nevertheless the complainant was its employee and therefore subject to the terms of the Employers' Liability Act of the State of Texas and could not recover. In further alternative, upon the predicate that in any event its negligence was only passive, whereas Halliburton's was active negligence, Francitas sought reimbursement from Halliburton, and also further pleading in the alternative, asserted that the sole proximate cause of the accident was the negligence of Harvey and other employees of Halliburton.

The Texas Employers' Insurance Association intervened to secure subrogation to the extent it had paid workmen's compensation benefits to Paulk as the insurance carrier of Starrett, his general employer, but in the present posture of the case, this feature is not material.

At the conclusion of the evidence, both defendants moved for instructed verdicts, which were taken under advisement and the case submitted to the jury on special interrogatories. By their answers the jury found that Paulk was injured by being struck by a rubber hose attached to Halliburton's equipment which at that time was "being used exclusively in connection with and in furtherance of the work of Francitas," and not being so exclusively used in furtherance of the work of Halliburton; that at the time of the injury the equipment was not being operated by, or under the exclusive control and direction of either Francitas or Halliburton; but under the direction and control of both; that Harvey released the pressure on the well and caused the rubber hose to strike Paulk and at that time he was the agent and employee of Halliburton but loaned or hired to Francitas by Halliburton, and in releasing the pressure acted solely as the agent of neither Halliburton nor Francitas, but was acting as the agent and employee of both, and that this release of pressure was not done at the direction of Francitas, and that Harvey, in releasing such pressure was not acting as agent of either Halliburton or Francitas alone but as agent of both, and that both Francitas and Halliburton were negligent, and that this negligence was the proximate cause of Paulk's injury. The jury further answered that Paulk at the time of his injury was the servant of Starrett, but loaned or hired to Francitas; that he was not at the time of the injury exclusively under the control or direction of Francitas or Starrett, but was under the control of both Starrett and Francitas. The jury was unable to agree as to the amount of damages, and by stipulation the question of amount was submitted to the Court who found the damages to be $14,500.00.

Both Halliburton and Francitas moved for judgment on the verdict. Halliburton moved the Court to set aside and disregard the jury's verdict for the reasons stated in its motion for a directed verdict, and in the alternative, for a judgment for it on the verdict; and in the further alternative, that the Court determine the verdict was insufficient to support a judgment in favor of the complainant and declare a mistrial; and in the further alternative, that any judgment entered be entered jointly against Francitas. Francitas' motion is to the same effect with reference to it. The Court overruled the motions and entered judgment for $14,500.00 against Halliburton, and recognized that judgment could not go against the gas company because the jury had found that Paulk was an employee of Francitas. He construed the work order [2] as a contractual obligation of Francitas to hold Halliburton harmless against recovery of damages against it, and concluded that Halliburton was entitled to judgment over against Francitas for $14,500.00. Halliburton by its specification of errors renews the objections urged in its motions in the trial Court, and to the failure of the Court to submit special interrogatories requested by it upon the trial. Francitas likewise appealed, complaining that the terms of the work order in nowise support the judgment of indemnity.

2. See footnote 1.

██ We shall first consider Halliburton's contentions. Halliburton strongly relies upon the terms of the work order to exonerate it from liability, not as a matter of law as against the complainant, who was not a party thereto and had no knowledge of it, but because it is claimed to establish as a matter of law that at the time of the accident it had relinquished all direction and control of its equipment and crew to Francitas and therefore Harvey was a special employee of Francitas. We can not accept this contention. So far as the rights of the complainant are concerned, the law and the realities of the situation clearly refute it. In considering the consequences of such a contract, we look to the circumstances of the transaction, rather than to the form of the paper required as an antecedent to its performance. It would be wholly unreasonable to give effect alone to the mere words of the work order as establishing exclusive control and direction of the specialized equipment and its operation in the face of the unchallenged testimony that such control could not be exercised by Francitas' employees (or by any other person not specially trained in its use), and when also, under the specific instructions of Halliburton to its employees, Francitas' employees were not to be permitted to operate or deal with the Halliburton equipment.

The testimony in this case requires the conclusion that in the conduct of the operation in question, at the time Paulk was injured, Francitas was concerned only with the results to be obtained, and had neither the right nor ability to control the details or manner of performance of the work, and was also expressly forbidden by the rules of Halliburton to participate therein.

██ The principles so clearly established in Insurors Indemnity and Insurance Co. v. Pridgen, Tex.Sup., 223 S.W.2d 217, amply sustain and validate the answers by the jury to the interrogatories, with the exception of their finding of joint negligence, to which we will advert later. In that case the Court quoted approvingly from Restatement of the Law Agency, Section 227, p. 501, as follows:

"A continuation of the general employment is indicated by the facts that the general employer may at any time substitute another servant, that the time of employment is short, and that the lent servant has the skill of a specialist.

"A continuance of the general employment is also indicated in the operation of a machine where the general employer rents the machine and a servant to operate it, particularly if the instrumentality is of considerable value. Normally, the general employer expects the employee to protect his interests in the use of the instrumentality and these may be divergent from the interests of the temporary employer. If the servant is expected only to give results called for by the temporary employer and to use the instrumentality as the servant would expect his general employer would desire, the original service continues." The further quotation and discussion clearly establishes the Texas law to be that in a case such as the present, even though Harvey may have been loaned or hired to Francitas, as found by the jury, and even though Francitas became a temporary employer, Halliburton as Harvey's general employer, remained liable for his acts of negligence. Likewise, as pointed out in the Pridgen case, supra, it was legally possible for both Halliburton and Francitas to be in effect in joint control of the equipment without thereby establishing Halliburton's exemption from liability. Thus the finding that Harvey was hired to Francitas does not amount to a finding that the right to control Harvey in all of his acts was with Francitas, for Francitas was the hirer of Harvey only as a member of Halliburton's crew. It appears therefore that, instead of Halliburton being entitled to judgment as a matter of law, the law and the facts conclusively establish liability against Halliburton, as the general employer, for Harvey's acts which were found to be negligent. Herndon v. Halliburton Oil Well Cementing Co., Tex.Civ.App., 154 S.W.2d 163; Humble Oil Refining Co. v. Martin, Tex.Sup., 222 S.W.2d 995; Insurors Indemnity and Ins. Co. v. Pridgen, supra; cf. Halliburton Oil Well Cementing Co. v. Millican, 5 Cir., 171 F.2d 426.

If there was inconsistency or error in the finding of the jury that both Halliburton and Francitas were negligent, it is not such inconsistency or error of which Halliburton can complain. It might be added, however, that the finding of the jury as to joint negligence was in accordance with the basis upon which the complainant predicated his case.

There was no error in the failure of the trial Court to submit to the jury the special interrogatories by which Halliburton sought to have determined the question whether Harvey was the special employee of Francitas and subject to its exclusive control.

Appellant contends that subsequent to the decision in the Herndon case, supra, as well as the Millican case, supra, it changed its work order considered in those cases by inserting the word "exclusive" before the words "direction and control." So far as the facts of this case are concerned, we think this effects no material change in the legal principles applicable here.

 Francitas assigns error upon the judgment of the trial Court awarding Halliburton judgment over against it. This action was predicated expressly upon the terms and provisions of the work order above referred to. This question of liability over was in nowise presented or involved during the trial of the case. We think the Court erred in this respect. It would appear that the contention of Francitas that the purpose of the work order is to make clear that Halliburton assumed no liability for any damage to the oil well resulting from the performance of a cementing or squeeze job is a reasonable one. A similar work order had been so plead as a defense in a case for the alleged negligent performance of this operation. Halliburton Oil Well Cementing Co. v. Millican, supra. However this may be, we think the work order is clearly insufficient to evidence an agreement of indemnity to Halliburton for personal injuries it might negligently inflict in the course of its cementing or squeeze operation. In considering this claim of indemnity we must bear in mind the rule that indemnity agreements are strictly construed against him who claims to be an indemnitee. 23 Texas Juris-

prudence, 526; Smith v. Scott, Tex.Civ. App., 261 S.W. 1089. This is particularly true where the result would be to indemnify against one's own negligence, and it will not be so construed unless such obligation is expressed in unequivocal terms. Southern Bell Tel. and Tel. Co. v. Mayor and Bd. of Alderman, 5 Cir., 74 F.2d 983; Employers Casualty Co. v. Howard P. Foley Co., 5 Cir., 158 F.2d 363; 27 Am. Juris., Sec. 15, p. 464. There is material difference between a provision disclaiming responsibility (as in the present work, order), and an agreement to indemnify. We think it clear that the work order will not support the judgment requiring indemnity, upon which it alone was predicated.

The judgment in favor of Paulk and against Halliburton from which Halliburton appeals, is affirmed. The judgment in favor of Halliburton against Francitas, from which Francitas appeals, is

Reversed.