**Melvin E. DREWERY, Jr., Appellant,**

v.

**DASPIT BROS. MARINE DIVERS, INC., Appellee and Cross-Appellant.**

**Melvin E. DREWERY, Jr., Appellant,**

v.

**SHELL OIL COMPANY, a Corporation, Appellee.**

**No. 19633.**

United States Court of Appeals Fifth Circuit.

May 8, 1963.

Rehearing Denied June 15, 1963.

---

Richard Joseph McGinty, Jr., Baldwin, Haspel, Molony, Rainold & Meyer, Robert R. Rainold, New Orleans, La., for appellant.

Robert B. Acomb, Jr., Edmond Salassi, of Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for Shell Oil Co.

George B. Matthews, Lemle & Kelleher, New Orleans, La., William P.

**426**

Schuler, Tapper, Schuler & Perez, Arabi, La., for Daspit Bros. Marine Divers, Inc.

Before RIVES, CAMERON and BELL, Circuit Judges.

GRIFFIN B. BELL, Circuit Judge.

The sole issue left in these cases after dismissal by the appellant is the validity of the judgment in favor of Shell Oil Company, third-party plaintiff, against Daspit, as third-party defendant, in the amount of the recovery of appellant from Shell Oil Company.

Appellant, a professional diver in the employ of Daspit, was injured during diving operations while attempting to locate a severed underwater oil line in the Gulf of Mexico for Shell. Suits brought against his employer, Daspit, under the Jones Act, and against Shell in maritime tort were consolidated for trial and appeal. He failed to prevail on the Jones Act claim, but did prevail on the maritime tort claim against Shell. The judgment in his favor against Shell was entered pursuant to a jury verdict. The judgment over in favor of Shell under the third-party complaint against Daspit was based on the terms of an indemnity clause contained in a contract between Shell and Daspit, whereunder Daspit was to inspect and repair the underwater pipeline. The indemnity question was not submitted to the jury, but was determined by the court after the jury had answered special interrogatories in connection with the main case. The material portion of the indemnity contract follows:

"Contractor shall indemnify Shell and hold it harmless from and against all claims of and liability to third parties (including, without limitation, all employees of Shell or Contractor and all subcontractors and their employees) for injury to or death of persons of loss of or damage to property arising out of or in connection with the performance of this contract, except where such injury, death, loss or damage has resulted from the negligence of Shell without negligence or fault on the part of Contractor or any subcontractor. Contractor shall defend all suits brought upon such claims and pay all costs and expenses incidental thereto, but Shell shall have the right, at its option, to participate in the defense of any such suit without relieving Contractor of any obligation hereunder."

The jury, inter alia, found in the main case that Daspit was not negligent, and that the proximate cause of the accident was the combined negligence of Shell and appellant; with Shell contributing twenty per cent and appellant eighty per cent to the accident. The recovery was apportioned accordingly.

The judgment over was rendered by the District Court on the promise of indemnity contained in the contract for any loss resulting from the successful claim of a Daspit employee injured during the performance of the contract by the concurrent negligence of Shell and Daspit. The negligence of appellant, the employee, as found by the jury, and with which finding the District Court agreed, in contributing to his own injury was imputed to Daspit, thus making concurrent negligence.[1]

1. The reasoning of the District Court follows:

"Under the agreement in suit Daspit expressly promises to indemnify Shell for any loss resulting from the successful claim of a Daspit employee injured during the performance of the contract by the concurrent negligence of both Shell and Daspit. The jury found, and the court concurs in the finding, that Drewery, the injured plaintiff, negligently contributed to his own injury. Since he remained Daspit's employee during the performance of the contract, see Standard Oil Co. v. Anderson, 212 U.S. 215 [29 S.Ct. 252, 53 L.Ed. 480]; Halliburton Oil Well Cementing Co. v. Paulk, 5 Cir., 180 F.2d 79; Benoit v. Hunt Tool Co., 219 La. 380, 53 So.2d 137; Restatement, 2d, Agency § 227, and was injured during the course of that employment, Drewery's negligence must be imputed to Daspit under the doctrine of

It is undisputed that appellant remained the employee of Daspit during the performance of the work under the contract, that he was injured during the course of his employment and in connection with the performance of the contract, and that Daspit was not negligent otherwise than through appellant. And there is no contention that Daspit, if concurrently negligent, was not liable under the contract to indemnify Shell for its own negligence.

It is the position of Daspit that the doctrine of imputed negligence is inapplicable since the negligence was that of the employee toward himself. The argument goes that a person may not commit a tort on himself; and absent tort, negligence is not imputable. Prosser on Torts, 2 ed., § 62, p. 350.

It is the position of Shell, on the other hand, that the imputed negligence doctrine embraces not only a tort against a third person by an employee, but a situation such as this of imputation for the purposes of contractual indemnification where the negligence is that of an employee contributing to his own injury. This contention is premised on the view that imputed negligence gives rise to primary liability, rather than mere secondary or derivative liability. See Jones v. Kinney, W.D.Mo., 1953, 113 F. Supp. 923; 57 C.J.S. Master and Servant § 570c, p. 299; Restat., Law of Agency 2d, § 217(b) ii; and Mechem, Outlines of the Law of Agency, § 362, p. 245.

Daspit relies on Trenkle v. Compagnie Generale Transatlantique, S.D.Cal., 1960, 179 F.Supp. 795, an action over by a ship against a stevedoring company. The breach of contract relied on by the ship was that the injured workman furnished by the stevedoring company was unfit for the work. The court found no evidence to support this position, but that the real cause of the injury was the unseaworthiness of the ship. The question of imputation to the employer of the negligence of the worker causing injury to himself

*respondeat superior.* Accordingly, Shell may recover over from Daspit the

was not presented, nor has it been presented in any of the other reported Ryan doctrine cases insofar as we can ascertain. Ryan Stevedoring Co., Inc. v. Pan-Atlantic S. S. Corp., 1956, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133; and Weyerhauser S. S. Co. v. Nacirema Operating Co., 1958, 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491. In fact, we have found no controlling authority nor has any been called to our attention, and the District Court cited none. There is even a dearth of treatise discussion on the subject.

We therefore approach the question as one of first impression. And we do so in the narrow range of the indemnity contract and the special finding allocating causative negligence as between Shell and Daspit's injured employee. No indemnification is indicated under the contract where the injury or loss has resulted from the negligence of Shell without negligence or fault on the part of Daspit. But the negligence of the employee contributed to the extent of eighty per cent to his injury, and the question is whether his negligence may be imputed to Daspit, thereby creating liability on its part under the indemnity contract.

The doctrine of imputed negligence applies in admiralty. Standard Oil Co. v. Anderson, 1909, 212 U.S. 215, 29 S. Ct. 252, 53 L.Ed. 480. And as we said in Arline v. Brown, 5 Cir., 1951, 190 F.2d 180:

The "doctrine of imputed negligence rests upon the maxim that he who acts through another acts himself."

It is settled that the imputed negligence doctrine may create liability on the part of the master for the tortious act of the servant toward another. Standard Oil Co. v. Anderson, supra. It is likewise settled that a master may be barred by the contributory negligence of his servant from recovery against a third-party tort-feasor. Pass v. Firestone Tire and Rubber Co., 5 Cir., 1957,

full amount for which it was cast in the main action."

242 F.2d 914; Liverpool and London and Globe Ins. Co. v. Otis Elevator Co., 4 Cir., 1949, 175 F.2d 832; Restat. Law of Torts, § 486, p. 1269; Restat., Law of Agency, 2d., § 317; Prosser on Torts, 2d Ed., § 54, p. 299.

> "It is a universal rule that the negligence of a servant acting as such within the scope of his employment which concurs with the negligence of a third person and contributes to cause injury to his master is imputed to the master." 65 C.J.S. Negligence § 162.

■ These authorities make it clear that imputed negligence, based as it is on a fiction, works to hold the master for injuries to third persons occasioned by the fault of his servant, and to bar the master where his servant contributes or concurs in the harm done the master. We are asked to take the doctrine one step further; to embrace the master through the imputation to the master of the negligence of the servant resulting in injury to himself, to the end of creating liability on the part of the master to an indemnitee under the terms of a contract.

But this additional step does not follow for here no tort against either a third person or the master is present, and the legal fiction of imputed negligence rests on such a tort. Negligence causing injury to one's self will not suffice, for a tort rests on the breach of a legal duty owed another. To take this step would be adding a legal fiction to another legal fiction.

Furthermore, we are construing a contract and it would be drastic indeed to extend the doctrine in the suggested manner to impose liability not clearly spelled out in the contract, as it is not. Halliburton Oil Well Cementing Co. v. Paulk, 5 Cir., 1950, 180 F.2d 79; and Batson-Cook Company v. Industrial Steel Erectors, 5 Cir., 1958, 257 F.2d 410. This is especially so where the end contended for was not a part of the subsisting law when the contract was made. Von Hoffman v. City of Quincy, 1867, 4 Wall. 535,

18 L.Ed. 403; United States v. Sentinel Fire Ins. Co., 5 Cir., 1949, 178 F.2d 217; and 17 C.J.S. Contracts § 330, p. 785.

Thus it is that the master cannot be held unless the court is to extend the doctrine of imputed negligence to a new area, and to a point it has never reached. This we decline to do. Judgment over against Daspit should have been denied. We reverse for this to be done.

Costs are taxed one half against appellant and one half against Shell.

Reversed with directions.

RIVES, Circuit Judge (dissenting).

I agree with the reasoning of Judge Wright as quoted in footnote 1 of the Court's opinion. Daspit contracted with Shell to inspect and repair the underwater pipeline, and agreed to indemnify Shell and hold it harmless from all claims of and liability to third parties "including, without limitation, all employees" of Daspit, for injury arising out of the contract. As I understand, the Court now holds that Shell's liability to Drewery, one of Daspit's employees, comes within the exception to that broad indemnity contract, which exception reads: "except where such injury, death, loss or damage has resulted from the negligence of Shell without negligence or fault on the part of Contractor or any subcontractor."

It is conceded that Drewery remained the employee of Daspit during the performance of the work under the contract, and that he was injured during the course of his employment. In answer to special interrogatories the jury found that both Shell and Drewery were negligent, and that the extent to which Drewery's negligence contributed to the accident was eighty per cent. This Court holds, however, that Daspit is not responsible for Drewery's negligence because Drewery himself was the employee injured by that negligence.

It seems to me that that holding overlooks the fact that Shell sues for its own loss, not for Drewery's injury; that as to Shell's claim against Daspit, Shell is the injured party, not Drewery. If an-

other of Daspit's employees swimming alongside of Drewery had been the "third party" injured, there could be no denial that Daspit was bound to indemnify Shell against any resulting liability. The loss to Shell is just as real when Daspit's negligent employee, Drewery, is himself the "third party" who suffers the personal injury. When the contract of indemnity includes "without exception, all employees" of Daspit, it embraces Drewery, the negligent employee himself.

The expression in the exception to Drewery's obligation of indemnity, "without negligence or fault on the part of Contractor or any subcontractor," includes, of course, not only acts or omissions of Daspit himself, but also those of his employees acting in the course of their employment. We need go no further than the indemnity contract itself to find not the implied warranty of workmanlike service held sufficient in Ryan Co. v. Pan-Atlantic Corporation, 1956, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133; Weyerhaeuser S.S. Co. v. Nacirema Co., 1958, 355 U.S. 563, 567, 78 S.Ct. 438, 2 L.Ed.2d 491; and Crumady v. The J. H. Fisser, 1959, 358 U.S. 423, 428, 79 S.Ct. 445, 3 L.Ed.2d 413, but an express contract of Daspit to indemnify Shell against liability to Drewery.

That conclusion is strengthened when we observe that for the injury or loss to be within the exception to Daspit's obligation of indemnity it must be "without negligence *or* fault on the part of Contractor." Whether or not Drewery's acts or omissions were "negligence" imputable to Daspit, they certainly constituted "fault" for which, under the contract, Daspit was responsible.

They were, I submit, also "negligence" imputable to Daspit, because Daspit owed a duty to Shell arising out of the contract to perform its part of the contract in such a manner as not to cause Shell to suffer loss. 38 Am.Jur., Negligence, Sec. 20. See also Prosser on Torts, 2d ed., Sec. 36. Drewery, an employee of Daspit, acting within the line and scope of his employment, has negligently caused Shell to incur liability and to suffer pecuniary loss. It is no answer to say that Drewery's negligently injuring himself was the means by which that result was accomplished. Insofar as Shell is concerned, there was nonetheless "negligence or fault on the part of" Daspit, and hence Daspit is bound by its contract to indemnify Shell.

I respectfully dissent.

Rehearing denied; RIVES, Circuit Judge, dissents.