In re TIDEWATER OIL COMPANY, Petitioning for Exoneration from, or Limitation of Liability.

Mrs. Betty Lee Brookshire TYNER, Widow and Administratrix of the Estate of Don Dalton Tyner, Individually, as Administratrix and as Guardian of and in behalf of her minor children, Ronald Dalton Tyner and Jace Brent Tyner

v.

The TRAVELERS INSURANCE COMPANY and Continental Casualty Company, H. B. "Buster" Hughes Co., Inc., and Employers' Mutual Liability Insurance Company.

Herman SAVOIE

v.

TRAVELERS INSURANCE COMPANY.

Civ. A. Nos. 66–330, 67–350 and 67–1120.

United States District Court,
E. D. Louisiana,
New Orleans Division.

Dec. 7, 1970.

Donald L. King, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for Tidewater Oil Co.

Monte J. Ducote, Schoemann, Gomes & Ducote, New Orleans, La., for H. B. "Buster" Hughes, Co., Inc., and Employers' Mutual Liability Insurance Co.

CASSIBRY, District Judge:

The only issue remaining for the Court to decide in these consolidated cases is whether Tidewater Oil Company is entitled to indemnity from H. B. "Buster" Hughes, Co., Inc. on its third-party claim. The original claims have been fully compromised, settled and dismissed, and the settlement funds were advanced by Tidewater and its insurer on one hand and Hughes and its insurer on the other hand. It was stipulated by the parties that the indemnity issue would be submitted to the Court for resolution based on the record, the contract between Tidewater and Hughes, several depositions taken for discovery purposes and another deposition taken specifically as evidence for the pending claim. After consideration of the foregoing, the Court hereby makes the following findings of fact and conclusions of law:

FINDINGS OF FACT

1.

On July 21, 1966, Teddy Smith was operating the MISS EASTSIDE, a motorboat owned, maintained and furnished to him by Tidewater to use in servicing its producing wells in Bastian Bay field, when the vessel was involved in a collision with the motorboat TOP TEN.

2.

The collision occurred as the MISS EASTSIDE emerged from the mouth of Gilmore slip and entered a main canal near Empire, Louisiana, with the bow stem of the MISS EASTSIDE striking the port bow of the TOP TEN, which was being operated by Herman Savoie in a northerly direction on his side of the main canal.

3.

Smith was operating the MISS EASTSIDE at maximum speed and failed to stop or slow its speed when entering the larger and more heavily trafficked main canal. Smith did not see the TOP TEN prior to the collision, as a result of which Herman Savoie sustained personal injuries and Don Tyner, a passenger in the TOP TEN, suffered fatal injuries.

4.

Hughes is in the business of furnishing labor, services and equipment to various oil companies for contractually agreed upon amounts. Tidewater and Hughes entered into a contract which provided that Hughes would furnish certain services and labor to Tidewater. Teddy Smith was a roustabout in a maintenance crew furnished to Tidewater pursuant to this contract. In July, 1962, Smith was selected by Tidewater from the mainte-

**16**

nance crew and assigned and trained by Tidewater to work as an assistant "switcher". As a "switcher", Smith had different duties than a roustabout, received a higher rate of pay, and was required to operate a motorboat, which he did not do as a roustabout.

5.

At all material times, Smith's work as a "switcher" was performed under the exclusive control and direction of Huey Cognevich, who was Tidewater's lease operator in charge of its tank battery. Smith worked 12 hours per day for seven days, and during that time had no contact with any other Hughes employee. He was fully cognizant that he was expected to take orders from Cognevich. No employee of Hughes supervised Smith's work. He was there to perform whatever labor Cognevich might designate, under Cognevich's control and supervision.

6.

Tidewater controlled Smith's hours of employment and furnished him transportation to and from the job site. Tidewater also reserved the right to approve Smith's daily time sheet before he was paid. Either Raymond Moore, Tidewater's field foreman, or Cognevich approved Smith's time sheets, on the basis of which Hughes paid Smith and in turn billed Tidewater. Tidewater also had authority to have Smith replaced if not satisfied with his work, even though it could not fire him.

7.

At the time of the collision Smith was returning to the Tidewater tank battery after servicing a well pursuant to instructions from Cognevich.

8.

Smith was unaware of the customary practice of yielding the right of way to the vessel traveling in the larger canal; he received no instructions from Tidewater as to safe operating procedures.

Tidewater published no safety instructions relating to the operation of its boats and it conducted no training program concerning the operation of boats. Also, no tests were given to Tidewater boat operators to determine their competency. Cognevich gave Smith no instructions concerning the safe operation of a boat.

CONCLUSIONS OF LAW

1.

 Teddy Smith was negligent in his operation of the MISS EASTSIDE, the burdened vessel, in failing to reduce the speed of his vessel when entering the main canal, in failing to see the TOP TEN prior to the collision, and in failing to keep clear of the TOP TEN, the privileged vessel. Such negligence was a proximate cause of the collision.

2.

 Teddy Smith was, at all material times, the "borrowed servant" of Tidewater; therefore Smith's negligence is imputable to Tidewater. Kiff v. Travelers Ins. Co., 402 F.2d 129, 131 (5th Cir. 1968); Touchet v. Travelers Indemnity Co., 221 F.Supp. 376, 379 (W.D.La.1963); Hebert v. California Oil Co., 280 F.Supp. 754, 758, 760 (W.D.La.1967); Halliburton Oil Well Cementing Co. v. Paulk, 180 F.2d 79, 83 (5th Cir. 1950).

3.

The contract between the parties provides, *inter alia*, that

"Contractor [Hughes] agrees to perform the work specified herein with due diligence according to Contractor's own method, Contractor being accountable to Tidewater only for the completed job. *All persons furnished by Contractor in the performance hereunder shall be considered servants or agents of Contractor, and not of Tidewater,* and Contractor shall be responsible as the employer of such persons under any applicable workmen's compensation, old age benefits, or unemployment insurance statutes and will fully comply with the employer's ob-

ligation under any such statutes." (Emphasis added.)

██ Tidewater contends that the emphasized language is controlling and specifically expresses the intent of the parties that all employees furnished under the contract would remain Hughes' employees. Therefore, Tidewater contends, as between the parties to the contract, Smith was not a "borrowed servant" but rather remained an employee of Hughes, which is vicariously liable for his negligence. This contention is rejected for two reasons. First, when the emphasized language is read in context it becomes obvious that the intent of the parties was that employees furnished under the contract would remain Hughes' employees for purposes of determining which employer should be responsible for workmen's compensation insurance, old age benefits, unemployment insurance, etc. The contract is at the very least unclear as to whether the parties intended that such employees would remain Hughes' employees for *all* purposes. Any ambiguity, of course, must be construed against Tidewater, which drafted the contract. Second, although the contract seems to indicate that Hughes was to perform as an independent contractor, "being accountable to Tidewater only for the completed job", the fact is that, with regard to Teddy Smith, Hughes was quite obviously not an independent contractor. As pointed out previously, Smith was completely subject to the control and direction of Tidewater. In such cases, "we look to the circumstances of the transaction, rather than to the form of the paper." Halliburton Oil Well Cementing Co. v. Paulk, 180 F.2d 79, 83 (5th Cir. 1950). The actual relationship in this case was one of "borrowed servant."

4.

██ Tidewater was independently and actively negligent in failing to properly supervise, control and instruct Teddy Smith in his duties and in failing to insure that its vessel was under the control of a competent operator, thus rendering the vessel unseaworthy. Such negligence and unseaworthiness were proximate causes of the collision.

5.

The contract between the parties provides, in part, that

"Contractor [Hughes] shall indemnify and hold harmless Tidewater against all damages and claims for damage, by reason of injury or death of persons or damage to property, *caused by the act or omission,* direct or indirect, *of Contractor* in performance hereunder." (Emphasis added.)

The contract does not clearly and unequivocally indemnify Tidewater against its own negligence, therefore no indemnity is due under the contract. Grigsby v. Coastal Marine Service, 412 F.2d 1011, 1039 (5th Cir. 1969); Despaux v. California Company, 286 F.Supp. 558, 560 (E.D.La.1968). The case relied on by Tidewater, Hanks v. California Co., 280 F.Supp. 730 (W.D.La.1967), is distinguishable. In *Hanks* there was no independent negligence on the part of California Co., while in this case Tidewater was guilty of such negligence. Also, in *Hanks* the contractor, Universal Services, Inc., had substandardly performed its service contract in that Universal's officers and employees ashore had improperly handled logistical details in supplying frozen food under the catering contract with actual knowledge of the facilities available on board ship. See 280 F.Supp. at 740. The other cases cited and relied upon by Tidewater are also either inapposite or distinguishable.

6.

Although Tidewater's indemnity claim appears to be based solely in contract, tort indemnity would likewise not be available to Tidewater because of its independent and active negligence. Tri-State Oil Tool Industries, Inc. v. Delta Marine Drilling Co., 410 F.2d 178 (5th Cir. 1969).

7.

Since Hughes was not negligent it is not necessary to decide whether United

**18**

States v. Seckinger, 397 U.S. 203, 90 S. Ct. 880, 25 L.Ed.2d 224 (1970), requires an apportionment of liability on the concept of comparative negligence. See Guillory v. Ocean Drilling & Exploration Co., 433 F.2d 833 (5th Cir. 1970).

Accordingly, pursuant to Rule 58, F.R. Civ.P., the clerk is directed to prepare, sign and enter a judgment in favor of third-party defendants, H. B. "Buster" Hughes, Inc. and Employers Mutual Liability Insurance Company of Wisconsin and against third-party plaintiff, Tidewater Oil Company, dismissing the third-party complaint and also providing that Tidewater Oil Company shall reimburse third-party defendants the sum of $58,333.33, representing the amount advanced by third-party defendants to compromise and settle the principal claims which have been dismissed as of compromise.