Carl E. Pugh and Alice
J. Pugh, Plaintiffs,

v.

Prairie Construction Co., Inc., Martin &
Pitz Associates, Inc., and Meyer,
Scherer, Rockcastle, Ltd., Defendants.

MARTIN & PITZ ASSOCIATES,
INC., Appellant,

v.

HUDSON CONSTRUCTION SER-
VICES, INC. and Prairie Con-
struction Co., Inc., Appellees.

No. 97–1941.

Supreme Court of Iowa.

Nov. 17, 1999.

Rehearing Denied Dec. 21, 1999.

Larry J. Cohrt of Swisher & Cohrt, Waterloo, for appellant.

Sean W. McPartland of Lynch, Dallas, Smith & Harman, P.C., Cedar Rapids, for

appellee Hudson Construction Services, Inc.

John T. McCoy of Yagla, McCoy & Riley, P.L.C., Waterloo, for appellee Prairie Construction Co., Inc.

Considered by McGIVERIN, C.J., and LARSON, CARTER, CADY, and ANDREASEN,* JJ.

LARSON, Justice.

Carl Pugh was injured while working on a construction project at Upper Iowa University in Fayette. He sued the project's general contractor and two architectural firms retained as consultants. Pugh settled his suit, setting the stage for an indemnity claim by the architects. The district court denied indemnity and one of the architectural firms appealed. We affirm.

## I. *Facts and Prior Proceedings.*

Pugh was employed by Hudson Construction Services, Inc., which provided drywall and acoustical tile services on the university project. He was injured when he stepped on a panel of unsupported gypsum sheathing and fell seventeen feet to a concrete floor. Pugh sued Prairie Construction Co., Inc., the general contractor, on the ground it had negligently supervised the project, and he sued the two architectural firms including the present appellant, Martin & Pitz Associates (MPA), for providing a defective architectural design.

After the initial suit was settled, the architects, who were looking to recoup their expenses of settlement, pressed for resolution of their indemnity claims. The district court, concluding that an allocation of fault was essential to resolving the indemnity issues, submitted the question to a jury. The jury found Pugh was 100% at fault. The court then resolved the indemnification issue.

* Senior judge assigned by order pursuant to

## II. *The Indemnity Provisions.*

The sole issue on this appeal is whether MPA is entitled to be indemnified by Prairie, the general contractor, and Hudson, as a subcontractor, for the amounts MPA had spent in settling Pugh's claim. This turns largely on the interpretation of the construction contracts. The contract between Prairie, as general contractor, and the university, as owner, incorporated by reference the "general conditions of the contract for construction," which provides in pertinent part, in paragraph 3.18.1:

> [T]he *Contractor shall indemnify and hold harmless* the Owner [University], *Architect* [MPA], Architect's consultants, and agents and employees ... *from and against claims, damages, losses and expenses ... but only to the extent caused in whole or in part by negligent acts or omissions of the Contractor, a Subcontractor,* anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder.

(Emphasis added.)

Paragraph 5.3.1 of the general conditions provides:

> [T]he *Contractor* shall require each Subcontractor ... to be bound to the Contractor by terms of the Contract Documents, and to assume toward the Contractor all the obligations and responsibilities which the Contractor, by these Documents, assumes toward the Owner and Architect. Each subcontract agreement shall preserve and protect the rights of the Owner and Architect under the Contract Documents with respect to the Work to be performed by the Subcontractor so that subcontracting thereof will not prejudice such rights....

(Emphasis added.)

In addition, paragraph XI of the subcontract agreement between Prairie and Hudson states that Hudson agrees:

Iowa Code section 602.9206 (1999).

To be bound to the Contractor by the terms of the General Contract, to conform and to comply with the provisions of the General Contract, to furnish such shop drawings or samples as may be required, and to *assume toward the Contractor all the obligations and responsibilities that the Contractor assumes in and by the General Contract toward the Owner,* insofar as they are applicable to this Subcontract.

(Emphasis added.)

MPA argues these provisions, when taken together, make Hudson, as a subcontractor, liable to provide indemnification to the same extent as the general contractor. MPA seeks indemnity from both Hudson and the general contractor.

## III. *The Imputed Negligence Issue.*

■ According to MPA, Pugh's negligence was imputed to Hudson, as his employer and, in turn, from Hudson to Prairie under the agreements quoted above. This court has never decided whether an employee's fault in causing his own injury is "negligence" that may be imputed to an employer for indemnity purposes. According to some authorities, negligence connotes a breach of duty to another. For example, the Restatement defines an act as negligent "if the actor intends it to affect, or realizes or should realize that it is likely to affect, the conduct of another, a third person, or an animal in such a manner as to create an unreasonable risk of harm to the *other.*" Restatement (Second) of Torts § 303, at 94 (1965) (emphasis added). We have said "the real basis of negligence in the primary sense is not *carelessness* but behavior which should be recognized as involving an unreasonable danger to *others.*" *Rinkleff v. Knox,* 375 N.W.2d 262, 265 (Iowa 1985) (emphasis added). We have also defined it as "conduct that 'falls below the standard established by law for the protection of *others* against unreasonable risk of harm.'" *Marcus v. Young,* 538 N.W.2d 285, 288

(Iowa 1995) (emphasis added) (citation omitted).

In *Drewery v. Daspit Brothers Marine Divers, Inc.,* 317 F.2d 425 (5th Cir.1963), a potential indemnitor argued that "the doctrine of imputed negligence is inapplicable since the negligence was that of the employee toward himself. The argument goes that a person may not commit a tort on himself; and absent tort, negligence is not imputable." *Drewery,* 317 F.2d at 427. The court agreed:

[It is clear that] imputed negligence, based as it is on a fiction, works to hold the master for injuries to third persons occasioned by the fault of his servant, and to bar the master where his servant contributes or concurs in the harm done the master. We are asked to take the doctrine one step further; to embrace the master through the imputation to the master of the negligence of the servant resulting in injury to himself, to the end of creating liability on the part of the master to an indemnitee under the terms of a contract.

But this additional step does not follow for here no tort against either a third person or the master is present, and the legal fiction of imputed negligence rests on such a tort. Negligence causing injury to one's self will not suffice, for a tort rests on the breach of a legal duty owed another. To take this step would be adding a legal fiction to another legal fiction.

Furthermore, we are construing a contract and it would be drastic indeed to extend the doctrine in the suggested manner to impose liability not clearly spelled out in the contract, as it is not. *Id.* at 428.

In *Troxler v. Owens–Illinois, Inc.,* 717 F.2d 530 (11th Cir.1983), the indemnity agreement was very similar to the one in this case. It provided indemnification for losses "caused in whole or in part by any negligent act or omission of the Contractor, any Subcontractor, anyone directly or indirectly employed by any of them or

anyone for whose acts any of them may be liable...." Applying Georgia law, the court held:

> [W]here the only negligence shown on the part of the contractor was the contributory negligence of the contractor's injured employee, strict construction [of the indemnity agreement] precluded construing the contract to require the contractor to indemnify the owner for the owner's acts of negligence.

*Troxler,* 717 F.2d at 536–37 (citing *Binswanger Glass Co. v. Beers Constr. Co.,* 141 Ga.App. 715, 234 S.E.2d 363, 366 (1977)).

In *Wicklund v. Gus J. Bouten Construction Co.,* 36 Wash.App. 71, 674 P.2d 184 (1983), a general contractor filed a third-party indemnity claim against a subcontractor whose employee was twenty-five percent at fault. The court noted:

> Washington follows the theory of imputed contributory negligence.... [However,] [w]here, as here, the employee has violated no duty to a third party, there is no negligence to impute. With no imputed negligence, [the subcontractor] is not a joint or concurrent tortfeasor and cannot be held to contribution.

*Wicklund,* 674 P.2d at 186–87.

The reasoning of *Drewery* and its progeny was rejected in *Eastern Airlines, Inc. v. Insurance Co. of North America,* 758 F.2d 132, 136 (3d Cir.1985). The reasons given were (1) "it is 'negligence' which is the issue, not whether the conduct is labeled a 'tort'"; and (2) the basis of the indemnitor's liability is not the result of an employee's negligence imputed to it through respondeat superior "but instead a [result of a] specific contractual obligation." *Id.* In *Eastern Airlines* the court held the employer was bound to indemnify the claimant for the consequences of the employee's acts in injuring himself because the contract required it. *Id.* (That is MPA's alternative argument: irrespective of imputed negligence Hudson and Prairie are bound by the contract documents to

indemnify MPA. We discuss that argument in the following division.)

█ In considering the opposing views of the cases under *Drewery*'s and *Eastern Airlines'* analyses, we are persuaded that *Drewery*'s reasoning is the sounder. We should not superimpose on the legal fiction of respondeat superior a second level of legal fiction by imputing negligence to an employer for indemnity purposes. In any event, the contracts in this case do not require with sufficient specificity that Hudson or Prairie indemnify MPA under the circumstances of this case. That presents the next issue.

## IV. *Scope of Indemnity Provisions.*

█ The construction contract between the owner and general contractor (which MPA argues is also applicable to Hudson) provided for indemnity (1) for the benefit of the owner and the architects, or their agents or employees; (2) for "damages, losses, and expenses, including ... attorney fees"; (3) for any claim arising out of the work on the project; (4) provided such claim "is attributable to bodily injury"; (5) "but only to the extent caused in whole or in part by negligent acts ... of the ... Subcontractor, [and] anyone directly or indirectly employed by them"; (6) "regardless of whether ... such claim ... is caused *in part* by a party indemnified hereunder." (Emphasis added.) For purposes of resolving this appeal, we will assume, as MPA argues, it is a third-party beneficiary of these agreements.

█ The question of whether Prairie and Hudson are liable for indemnity is a matter for the court to determine as a matter of law. *Ferguson v. Allied Mut. Ins. Co.,* 512 N.W.2d 296, 299 (Iowa 1994); *Huber v. Hovey,* 501 N.W.2d 53, 55–56 (Iowa 1993). None of the parties dispute this principle. Ordinarily, indemnifying agreements will be enforced according to their terms, as in any other contract case. *Pirelli–Armstrong Tire Corp. v. Midwest–Werner & Pfleiderer, Inc.,* 540 N.W.2d

647, 649 (Iowa 1995). However, some unique rules apply in the construction of indemnity contracts. For example,

> where an indemnification is not given by one in the insurance business but is given incident to a contract whose main purpose is not indemnification, the indemnity provision must be construed strictly in favor of the indemnitor.

41 Am.Jur.2d *Indemnity* § 13, at 356 (1995) [hereinafter 41 Am.Jur.2d] (footnote omitted); *accord* Maurice T. Brunner, Annotation, *Liability of Subcontractor Upon Bond or Other Agreement Indemnifying General Contractor Against Liability for Damage to Person or Property*, 68 A.L.R.3d 7, 23–24 (1976) [hereinafter Annot.]. Also, an indemnity contract is strictly construed against the drafter, in this case MPA. *See* 41 Am.Jur.2d at 356; Annot., 68 A.L.R.3d at 23. Further, a party will not be indemnified for its own negligence "unless the agreement provides for it in 'clear and unequivocal' language." *Payne Plumbing & Heating Co. v. Bob McKiness Excavating & Grading, Inc.*, 382 N.W.2d 156, 160 (Iowa 1986) (quoting Annot., 68 A.L.R.3d at 68–69). The rationale for this principle is explained by one authority, referring to statutes prohibiting the indemnification for a party's own negligence:

> The purpose of statutes making indemnity agreements in construction contracts void and unenforceable is to prohibit avoidance by parties to construction contracts of all risks created by their own fault associated with contract performance, to require employers to provide employees with a safe place to work, and to preclude delegating to subcontractors such duty.

42 C.J.S. *Indemnity* § 8b, at 85–86 (1991) (footnotes omitted). We believe this is sound policy.

The only basis for liability asserted against MPA in the initial suit by Pugh was an allegedly defective design, so when MPA defended the case, it defended against a claim of its own negligence. The agreements relied on by MPA do not provide indemnification for MPA's own negligence in clear and unequivocal language. In fact, the general contract is confusing on this issue. The contract provides for indemnification "regardless of whether or not such claim is caused *in part* by a party indemnified hereunder." (Emphasis added.) The contract did not provide indemnification for a claim caused solely by the acts of an indemnitee. In this case, the architects were responsible for the design of the project, so any claim of negligent design would necessarily be directed only at them. The contract itself casts further doubt on whether indemnification would be provided for MPA's own negligence. In the section of the general contract pertaining to indemnity, this provision appears in paragraph 3.18.3:

> The obligations of the Contractor under this Paragraph 3.18 shall not extend to the liability of the Architect, the Architect's consultants, and agents and employees of any of them arising out of (1) *the preparation or approval of maps, drawings, opinions, reports, surveys, Change Orders, designs or specifications*, or (2) the giving or the failure to give directions or instructions by the Architect, the Architect's consultants, and agents and employees of any of them provided such giving or failure to give is the primary cause of the injury or damage.

(Emphasis added.)

Because the contracts relied on by MPA do not meet the test of clear-and-unequivocal language and the negligence of Pugh cannot be imputed to his employer or a third party, the court did not err in refusing indemnity.

**AFFIRMED.**