Annie J. BROGDON, Plaintiff,

v.

SOUTHERN RAILWAY COMPANY, Defendant Third-Party Plaintiff-Appellant,

v.

FOOTE MINERAL COMPANY, Third-Party Defendant-Appellee.

Nos. 17349, 17350.

United States Court of Appeals Sixth Circuit.

Sept. 8, 1967.

Clyde W. Key, Knoxville, Tenn., for Southern Railway Co.

J. H. Doughty, Knoxville, Tenn., for Foote Mineral Co., Hodges, Doughty & Carson, Knoxville, Tenn., of counsel.

Before PHILLIPS, EDWARDS and CELEBREZZE, Circuit Judges.

EDWARDS, Circuit Judge.

Two appeals are presented from damage awards of $10,000 each against Southern Railway Co., defendant and third-party appellant, in appeal No. 17,-349, and Foote Mineral Co., third-party defendant-appellee, in appeal No. 17,350.

In the original cause of action Annie J. Brogdon sued Southern Railway Co. for negligence in causing the death of her husband Orville L. Brogdon. Brogdon was killed June 12, 1964, when he was crushed between an overhead conveyor owned by Foote and the top of a freight car owned by Southern. Brogdon was seeking to load the Southern car with Foote Mineral Co. lime. At the time he was an employee of Foote; and his widow recovered Workmen's Compensation benefits for his death against Foote.

A provision in the Tennessee Workmen's Compensation Law, TENN.CODE ANN. § 50–908 (1955), makes it the exclusive remedy against an employer for injury or death in the course of employment. Annie Brogdon's suit for damages was filed only against Southern. It alleged that Southern's negligence (including providing a car with defective brakes) was a proximate cause of her husband's death. This case was tried before a jury which awarded Annie J. Brogdon $20,000.[1] Neither plaintiff, Annie Brogdon, nor defendant, Southern Railway Co., appeals this result.

These appeals result from Southern's third-party action filed against Foote. Southern's principal claim was for indemnity under the terms of a written contract with Foote.

This action was tried before the United States District Judge without a jury concomitantly with the Brogdon jury trial. The District Judge awarded Southern $10,000 indemnification from Foote, holding that Southern and Foote were equally guilty of proximate negligence in causing Brogdon's death.

The District Judge's Memorandum Opinion said:

"The proof in this case shows that Foote and Southern violated the clearance provisions of the Tennessee statutes hereinbefore mentioned. As previously indicated, that statute provides that the clearance along railroad tracks shall be at least 22 feet above the top of the rails. This conveyor which contributed proximately to the death of Mr. Brogdon was not more than 18 feet from the top of the rails— the proof indicates nearer to 17 feet. If the conveyor had cleared 22 feet over the rails, this tragic accident could have been avoided.

"Foote and Southern are equally responsible in the opinion of the Court in this respect.

1. The size of the award may have been affected by Tennessee's "remote contributory negligence doctrine" which allows a jury to grant a reduced award when it finds remote contributory negligence. McCullough v. Johnson Freight Lines, 202 Tenn. 596, 308 S.W.2d 387 (1957).

\* \* \* \* \* \*

"The second point relates to the brakes on the car. This was a highly controversial issue before the jury. If the jury had followed the evidence of the Southern's witnesses it would have been required to find that the brakes were not defective. On the other hand, if it believed the evidence of the plaintiff's witnesses, it would have been required to find, as it did find, that that car had defective brakes.

"In the opinion of the Court, the evidence preponderated in favor of the plaintiff's theory that the brakes were defective on the occasion of this accident.

\* \* \* \* \* \*

"Another point that is involved pertains to the negligence of Foote. In the opinion of the Court, Foote was about as negligent as a company could be under the same circumstances which existed in this case.

"In the first place, it put a 17-year-old boy who had only been working for it for five days out there on that industrial track and permitted him to manipulate the brakes on that car. The evidence was such that the jury could have found that he touched the wrong lever and thus released the brakes entirely rather than using the wheel to release them gradually.

"In the opinion of the Court, Foote Mineral Company was guilty of extreme negligence in permitting a minor, Paul Leek, to operate that car under the circumstances which obtained at the time of this accident. So the Court is of the opinion that under the common law count of the original complaint and under the count charging violation of the Tennessee clearance statute, each of the parties was guilty of negligence which proximately caused or proximately contributed to the accident and resulting death."

█ At the outset we hold that this record contains ample evidence to uphold the District Judge's finding that both Southern and Foote were equally guilty of negligence which constituted proximate causes of Brogdon's death. The evidence shows conclusively that Foote (with Southern's full knowledge) erected a conveyor without the clearance required by a Tennessee state statute. TENN.CODE ANN. §§ 65–623—65–230 (1955).

There is also evidence to support a finding that Foote was negligent in allowing a 17-year-old to operate the car under the facts involved and that his negligence was a proximate cause of Brogdon's death.

As to Southern, there was also evidence from which proximate negligence could be found in Southern's knowledge of prior malfunction of the brakes on the car involved in this fatality.

There remain, however, some interesting legal issues. The first concerns whether or not the exclusive remedy provision of Tennessee's Workmen's Compensation law, TENN.CODE ANN. § 50–908 (1955), not only insulates Foote, the employer, from Annie Brogdon's suit, but also bars the third-party derivative suit of Southern.

█ We find no case decided by the Supreme Court of Tennessee which controls our decision. But in a well-reasoned opinion the Fourth Circuit held that where the employer had expressly contracted to indemnify a third-party, the exclusive remedy provision of Tennessee law did not serve to invalidate such a contract. We now accept and adopt the reasoning on this point of the Fourth Circuit in General Electric Co. v. Moretz, 270 F. 2d 780, 789–791 (C.A.4, 1959), cert. denied, [Mason & Dixon Lines v. General Electric Company] 361 U.S. 964, 80 S.Ct. 593, 4 L.Ed.2d 545 (1960).

The last questions pertain to construction of the contract of indemnity. These provisions were contained in a switch track agreement of which paragraphs 4 and 5 provided:

"4. That it will, except as to existing structures, observe and be bound

by the rules of the Railway Company for standard clearances, and will at all times keep free and clear of any obstruction whatever by future structures the space above said industrial tracks twenty-two (22) feet, measured perpendicularly from the top of the rail in each of said tracks (except that the overhead clearance where wire lines now or hereafter extend over said tracks shall be such as may be prescribed by the Railway Company), and the space twenty (20) feet in width, measured ten (10) feet each way from the center of each of said tracks, all future structures, facilities or property of the party of the second part located or placed above the said tracks or parallel with the same to be safely and substantially maintained by the party of the second part to preserve said clearance; PROVIDED, however, that as to existing structures, where standard clearances do not obtain, the party of the second part shall place and maintain a warning sign, satisfactory and acceptable to the Railway Company, at a conspicuous place on each of such structures to the effect that the building or structure will not clear man on side of car, and/or on top of car, as the case may be. In the event of default of compliance with this requirement or of the violation of this covenant by the party of the second part, the Railway Company may forthwith discontinue or decline to operate said tracks without liability to the party of the second part.

"The party of the second part will, moreover, indemnify and save harmless the Railway Company from and against the consequences of any loss of life, personal injury, or property loss or damage which may be caused by, result from, or arise by reason of or in connection with, any limited or restricted clearances for said industrial tracks.

"5. That it will indemnify and save harmless the Railway Company against any and all damages resulting from negligence of party of the second part, its servants and employees, in and about said industrial tracks and the rights-of-way therefor; and furthermore, against any and all claims, demands, suits, judgments or sums of money accruing for loss or damage by fire communicated by locomotive engines or trains of the Railway Company to buildings or structures used by party of the second part, or its tenants, in connection with the business served by said tracks, or to the contents of such buildings or structures, or to other property stored by or with the consent of the party of the second part upon or near said tracks. The Railway Company hereby stipulates for this protection, as a condition of its agreement, herein expressed, to afford the above described terminal services and facilities to the party of the second part elsewhere than at its regular station."

■■. In paragraph 4 of the indemnity agreement Foote undertook to save Southern harmless from any violations of the clearance agreement which required 22 foot clearance above the rail level of all structures. The language of paragraph 4, however, makes no reference to saving Southern harmless from Southern's own negligence. The majority view is that such indemnity agreements should not be extended to indemnify the indemnitee's own negligence unless the language is clear and unambiguous. Kroger Co. v. Giem, 215 Tenn. 459, 387 S.W.2d 620 (1964); General Accident Fire & Life Assurance Corp. v. Finegan & Burgess, Inc., 351 F.2d 168 (C.A. 6, 1965). It would have taken little time for a Southern Railway attorney to have added the words "including damage from indemnitee's own negligence" to the language of paragraph 4. Not finding such language (or any compelling inference), we decline to supply it.

■ We note without deciding Foote's claim that Southern, by knowledge and acquiescence in Foote's clearance violation, waived its rights under paragraph 4. The District Judge allowed the partial recovery which he awarded Southern

not under paragraph 4 but under paragraph 5. And paragraph 5 makes Foote responsible for indemnifying Southern for the negligence of Foote's employees. See Buckeye Cotton Oil Co. v. Louisville & Nashville R.R., 24 F.2d 347 (C.A.6, 1928).

Foote in turn argues that the basic suit is against Southern and that the jury award against Southern indicates that Southern is the only negligent party. This of course, isn't necessarily true at all. The final jury award against Southern establishes that Southern's negligence was *a* proximate cause of Brogdon's death. But the third-party pleading filed by Southern pleads Foote's failure to follow the Tennessee statute on clearance and the negligent operation of the car by a 17-year-old employee as negligence on the part of Foote. As we have previously indicated, we believe that the evidence clearly justifies the District Judge's finding of fact that Foote was indeed equally negligent.

The judgments of the District Court in both appeals are affirmed.