August E. DESPAUX, as personal representative of Vivian Despaux Muscarello, et al., Plaintiffs,

v.

The CALIFORNIA COMPANY and Noble Drilling Corporation, Defendants.

No. 6451.

United States District Court
E. D. Louisiana,
New Orleans Division.

July 15, 1968.

Roland J. Sternfels, John A. Slavich, New Orleans, La., for plaintiffs.

Lloyd C. Melancon, New Orleans, La., for Chevron Oil Co. (The California Co.).

George V. Baus, New Orleans, La., for Noble Drilling Corp.

Donald L. King, New Orleans, La., for Louisiana Casing Crews, Inc. and The Travelers Ins. Co.

RUBIN, District Judge:

This case presents again "the simple and oft-recurring problem: does the indemnity agreement involved require the Indemnitor to save harmless the Indemnitee against the consequences of the Indemnitee's negligence?" Batson-Cook Company v. Industrial Steel Erectors, 5 Cir., 1958, 257 F.2d 410. The answer to the question thus put in *Batson-Cook* is equally applicable in this case, except that here the picture is even more constricted than the "very narrow frame" of Alabama law within which it was there viewed. I conclude that the claim for indemnity for costs of defense must be rejected.

## FACTS

Anthony Muscarello was employed by Louisiana Casing Crews, Inc. ("Louisiana Casing"). He was a member of a five-man casing crew sent to an offshore drilling platform to do a job for Chevron Oil Company ("Chevron") on a derrick erected and owned by Noble Drilling Corporation ("Noble"). Muscarello was on the Noble derrick, about thirty feet above the drilling floor, attempting to set up a stabbing board owned by Chevron, when he fell to the drill floor.

Muscarello died from the injuries received in the fall and suit was filed by his widow and children against Chevron and Noble. Chevron filed a third-party complaint against Louisiana Casing on the basis of an indemnity agreement that read in relevant part as follows:

"Contractor [Louisiana Casing] agrees to perform the work as an independent contractor and not as an employee of Company [Chevron] * * *.

"Contractor [Louisiana Casing] agrees to hold Company [Chevron] indemnified and harmless from and against any loss, expense, claim or demand for:

"(A) Injury to or death of Contractor's [Louisiana Casing's] employees * * * in any way arising out of or connected with the performance by Contractor [Louisiana Casing] of services hereunder * * *."

After suit was filed, Chevron called on Louisiana Casing "to defend, hold harmless and indemnify [Chevron] without qualification." Louisiana Casing replied that it would "undertake the defense * * * and would respond to any judgment rendered * * * except insofar as any judgment is based upon liability arising out of the unseaworthiness of the vessel." Chevron in turn responded that it "cannot accept the qualified offer of indemnity" and its own counsel appeared

on its behalf. Louisiana Casing's counsel also appeared.

After the pleadings were completed and the parties announced their readiness for trial, a pre-trial conference was held. At the pre-trial conference, the plaintiffs' lawyer dropped the unseaworthiness claim. Later, and before trial, Louisiana Casing (through its insurer) settled the plaintiffs' claim in full and obtained a dismissal on behalf of all parties. Although Louisiana Casing had tendered a full defense and qualified only its obligation to pay a judgment, Chevron contends that Louisiana Casing owes it the attorney's fees and expenses incurred in defending the suit up to the time of the compromise.

## LAW

While *Batson-Cook* was a diversity case, and applied Alabama law, it expressed the principles applicable here for it set forth the general rule of construction that has been adopted by the Fifth Circuit and by a majority of the other courts that have considered the scope of similar indemnity agreements. The court there said:

"[T]he problem inexorably begins and ends as one of construction of the specific contractual terms, and * * in this process it is the law which steps in and tells the parties that while it need not be done in any particular language or form, unless the intention is unequivocally expressed in the plainest of words, the law will consider that the parties did not undertake to indemnify one against the consequences of his own negligence." 257 F.2d at 412.

The court cited abundant applicable authority in its footnote 3, and it would only add to the length of this opinion to repeat those citations. The contractual clause construed there was as broad as the one here. It contained all inclusive indemnity language but it did not expressly apply to the indemnitee's negligence. The Court of Appeals therefore concluded that the agreement did not extend that far, saying:

"The phrase stressed heavily is indeed broad. But the broad, all-inclusiveness of language used is itself one of the indicia which the law regards as insufficient. The purpose to impose this extraordinary liability on the Indemnitor must be spelled out in unmistakable terms. It cannot come from reading into the general words used the fullest meaning which lexicography would permit." 257 F.2d at 413.

The same rule of construction has been adopted in Louisiana. Thus, in Mills v. Fidelity & Casualty Company of New York, W.D.La., 1964, 226 F.Supp. 786, the Court said:

"Section 10(a) [of the contract] does not provide in clear and specific language that Southern will indemnify Yuba for loss occasioned by Yuba's own negligence. Therefore, under Louisiana law the indemnity contract must be interpreted as *not* providing for such indemnity." 226 F.Supp. at 790. (Emphasis in original)

See also Dubuque Fire & Marine Ins. Co. v. Union Compress & Warehouse Co., W.D.La., 1956, 146 F.Supp. 482; Buford v. Sewerage & Water Board of New Orleans, La.App., Orl.Cir., 1937, 175 So. 110.

It is not necessary therefore to determine whether the interpretation of the contract is controlled by Louisiana law or, because this is an offshore accident, by general admiralty law. In either event, the language of the indemnity agreement did not reach claims of unseaworthiness or other claims arising from Chevron's sole fault since it contained no express coverage of such claims. Nor should this surprise Chevron, for Chevron drafted the contract and it could easily have included the necessary additional clause had the contract been intended to have the scope here contended for. As the Court pointed out in Brogden v. Southern Railway Company, 6 Cir., 1967, 384 F.2d 220:

"It would have taken little time for a Southern Railway attorney to have added the words 'including damage

from indemnitee's own negligence' to the language of paragraph 4. Not finding such language (or any compelling inference), we decline to supply it." 384 F.2d at 223.

The authorities cited by Chevron are inapposite. Florida law is contrary, as the decision in Jacksonville Terminal Co. v. Railway Express Agency, Inc., 5 Cir., 1961, 296 F.2d 256, demonstrates, but that was a diversity case, governed by Florida law, as was American Agricultural Chemical Co. v. Tampa Armature Works, Inc., 5 Cir., 1963, 315 F.2d 856. Judge Brown pointed out in his concurring opinion in the *American Agricultural Chemical Company* case:

"One state for perfectly good reasons may conclude that the word 'all' means something less. It may, for example, believe that while such indemnity contracts are not void, it is unwise for its citizens to be exposed to almost unlimited liability precipitated by the negligence of the very person being indemnified unless that purpose is spelled out with positive clarity. Such a rule, if adopted, represents a state policy—a state policy which we are neither competent nor free to judge. Businessmen contracting in the light of it can protect themselves accordingly. A businessman, with or without insurance, might be willing to take on himself the liabilities of an indemnity agreement under such an interpretation. On the other hand, unless he obtains insurance or renegotiates the contract price, he might be unwilling to become a virtual, unlimited, uncompensated insurer under the other interpretation. Where this rule—one way or the other—is announced by clear state precedents, it is as much a part of the meaning of the word 'all' as are the letters a–l–l." 315 F.2d at 863.

Turner Construction Company v. Belmont Iron Works, E.D.Pa., 1957, 158 F. Supp. 309, would also resolve the case in Chevron's favor, if New York law applied, but it too is a diversity case applying state law.

The other cases cited by Chevron can be dealt with briefly. Lusich v. Bloomfield Steamship Company, 5 Cir., 1966, 355 F.2d 770, and Singer v. Dorr, E.D. La., 1967, 272 F.Supp. 931, dealt with an implied indemnity arising under the doctrine of the Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 1956, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133, and, as the court said in *Lusich:*

"No problem of 'the narrow range' of a written indemnity contract is involved in this action based solely upon breach of implied warranty under the Ryan doctrine." 355 F.2d at 778.

In Loffland Bros. Co. v. Roberts, 5 Cir., 1967, 386 F.2d 540, the contract expressly extended to claims "brought about or caused in whole or in part by negligence of [the indemnitee], its agents, directors, officers, employees, servants or subcontractors * * *." In White v. California Co., W.D.La., 1965, 260 F.Supp. 586, aff'd sub nom. Bogle v. California Co., 5 Cir., 1966, 369 F.2d 699, as in Aluminum Co. of America v. Hully, 8 Cir., 1952, 200 F.2d 257, the indemnitor refused to accept the defense at all even though the claim was within the scope of the contract. Likewise, in Seneca v. California Oil Co., W.D.La., 1964, 244 F.Supp. 350, a defense was denied; while in White v. California Co., W.D.La., 1965, 260 F.Supp. 586, the indemnitor failed timely to accept the defense.

Indemnity Insurance Co. of North America v. Koontz-Wagner Electric Co., 7 Cir., 1956, 233 F.2d 380, deals only with the question of whether an express agreement to defend against the indemnitee's negligence was void. The court held such a clause to be valid and enforceable. Again in Pure Oil Co. v. Geotechnical Corp. of Delaware, E.D. La., 1955, 129 F.Supp. 194, there was an express undertaking to defend against the indemnitee's negligence.

It need not be here decided what obligation, if any, Chevron had with respect to the payment of the principal claim. Louisiana Casing has settled it. This de-

cision concerns only the issue now before the court. Chevron cannot secure reimbursement from Louisiana Casing for its counsel's fees and defense expenses.

This opinion will serve in place of findings of fact and conclusions of law. The Clerk will prepare a judgment in accordance with it.