**TRANSCONTINENTAL GAS PIPE LINE CORPORATION**

v.

**The Mobile Drilling BARGE or VESSEL known as MR. CHARLIE, her engines, etc., et al.**

**Civ. A. No. 67–32.**

United States District Court
E. D. Louisiana,
New Orleans Division.

Dec. 30, 1968.

Thomas H. Leach, Leach, Grossel-Rossel, New Orleans, La., for plaintiff.

George B. Matthews, Lemle & Kelleher, and Charles E. Dunbar, III, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, La., for Ocean Drilling & Exploration Co.

Bernard, Micholet & Cassisa, Paul V. Cassisa, New Orleans, La., Trial Atty., Vinson, Elkins, Weems & Searls, William R. Eckhardt, Houston, Tex., for Louisiana Land & Exploration Co., Exchange Oil & Gas Co., Amerada Petroleum Corp., and Preston Oil Co.

Butler, Binion, Rice, Cook & Knapp, Houston, Tex., Frank J. Knapp and Fletcher Etheridge, Houston, Tex., of counsel, and Jas. W. Tranchin, of Hammett, Leake & Hammett, New Orleans, La., for Forest Oil Corp., and Dorn & Miller Co., third-party defendants.

Bean & Manning, Houston, Tex., Frank M. Bean, Houston, Tex., of counsel, and Bruce J. Borrello, New Orleans, La., for Texas Gas Exploration Corp.

MITCHELL, District·Judge.

This suit involves the following corporations, hereinafter referred to by the

abbreviations appearing in parentheses after each:

Amerada Petroleum Corporation (AMERADA)

Dorn & Miller (D&M)

Exchange Oil & Gas Company (EXCHANGE)

Forest Oil Corporation (FOREST)

Louisiana Land and Exploration Company (LL&E)

Ocean Drilling & Exploration Company (ODECO)

Preston Oil Company (PRESTON)

Signal Oil and Gas Company (SIGNAL)

Texas Gas Exploration Corporation (TGE) and

Transcontinental Gas Pipe Line Corporation (TRANSCO)

The casualty complained of occurred in the Eugene Island Area, off the Louisiana Coast in the Gulf of Mexico, each segment of which is approximately three miles square and designated a Block, by number. The location and borderline of each Block is reflected on well recognized maps used by the various agencies of the United States of America and the State of Louisiana, as well as the oil industry, in connection with oil and gas leasing, exploration and production in the offshore waters of the Gulf of Mexico.

Sometime in July, 1963, TRANSCO, plaintiff herein, secured all required permits and rights-of-way for the construction (laying) of a twenty inch gas pipe line across the floor of the Gulf of Mexico, offshore in the Eugene Island Area.

TRANSCO's pipe line was buried about five feet under the floor of the Gulf running diagonally across Block 106 in a northwest/southeast direction.

Sometime prior to 1963 FOREST obtained from the United States an oil and gas lease covering Block 106. On or about January 7, 1966, FOREST entered into an Operating Agreement with SIGNAL, LL&E, EXCHANGE, AMERADA, PRESTON, TGE and D&M under the terms of which one or more wells would be drilled in Block 106, the respective rights and liabilities of the participating parties being clearly defined therein, SIGNAL being designated as Operator.

On or about October 29, 1965, SIGNAL, for the benefit of itself and the other parties to the agreement, entered into a contract with ODECO, pursuant to which ODECO agreed to drill a well at a location 6,700 feet south and 4,000 feet west of the northeast corner of Block 106. This contract, designated in the record as the Drilling and Rework Contract, called for the use of a submersible type drilling barge known as the Mr. Charlie in the drilling of the proposed well.

The Mr. Charlie, at all times material hereto owned, operated and navigated by ODECO, is a submersible, flat bottom drilling barge equipped with steel "stabilizing skirts" affixed to, and running along her bottom on both her port and starboard sides. They extended downward (below her bottom) approximately five feet. The Mr. Charlie is without motive power and must be towed or moved by tugs when afloat. When being raised, lowered, or moved from one location to another, she is in command of an employee of ODECO, variously referred to as the barge operator, barge mover or captain who, at all times material hereto, was Steve Vorenkamp, a regular employee of ODECO.

Pursuant to the contract, and through the use of tugs paid for by SIGNAL, the Mr. Charlie, under Vorenkamp's control, was towed to the drill site designated in the contract, the exact location previously having been surveyed and buoyed by Surveyors, Inc., an independent surveying company engaged and paid by SIGNAL.

When the Mr. Charlie arrived in the proximity of the drill site, Surveyors' employees gave Vorenkamp advice necessary to enable him to position the Mr. Charlie's drilling slot within fifty feet of the buoyed location, that being the

tolerance or variation acceptable in the industry. The final resting position of the barge in relation to the position called for in the contract was thereupon approved by SIGNAL's representative, who was aboard the Mr. Charlie. After being positioned on January 8, 1966, the tanks of the Mr. Charlie were flooded and she was submerged so as to rest on the bed of the Gulf. Thereafter, normal drilling operations commenced and continued until the morning of January 12, 1966, by which time the well was down to a depth of over 5,000 feet.

On or about January 12, 1966, (through means never brought out during the trial) it was discovered that the Mr. Charlie lay almost directly across TRANSCO's gas pipe line, in such a manner that her stabilizing skirts rested on and made contact therewith, causing the damage of which complaint is herein made.

On or about January 12, 1967, TRANSCO filed this complaint, *in rem*, against the Mr. Charlie, her engines, tackle, apparel, etc., for the damage allegedly sustained by its pipe line as a result of the Mr. Charlie resting on it. Admiralty and maritime jurisdiction of this Court was alleged and admitted by all parties.

ODECO filed claim as owner of the Mr. Charlie, answered the complaint and thereafter filed third party complaints against FOREST, SIGNAL, LL&E, EXCHANGE, AMERADA, PRESTON, TGE and D&M. All third party defendants answered both the original and third party complaints.

The matter came on for trial before this Court during the period September 23-26, 1968, inclusive. Upon completion of testimony and oral argument, the Court, from the bench, orally announced its reasons for judgment, and directed the parties to submit proposed findings of fact and conclusions of law. After receiving and considering those proposed, the Court now makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

### I.

At all times material hereto TRANSCO was the sole owner of a twenty inch gas pipe line transversing Block 106 of the Eugene Island Area in the Gulf of Mexico, off the coast of the State of Louisiana. Prior to construction of the pipe line, TRANSCO obtained all proper and necessary permits and rights-of-way. The location, depth and course of the pipe line, as laid, corresponded in all respects with the permits and authorizations granted by state and federal agencies, and the existence and location of the pipe line, at the time of this occurrence, were clearly reflected on numerous maps, charts and drawings which TRANSCO was required to file with state and federal agencies having jurisdiction over such matters. The maps, charts and drawings showing the exact location of TRANSCO's pipe line were on file with (among other agencies) the Bureau of Land Management, United States Department of Interior; the United States Army Corps of Engineers; and the Louisiana Department of Conservation, and were readily accessible and available to the public, including all parties hereto, at all times.

TRANSCO was wholly without knowledge of the contemplated drilling of instant oil well in Block 106 and there is no suggestion whatsoever of any negligence or fault on its part.

### 2.

Prior to the construction of its pipe line, and prior to the date FOREST assigned an interest in its lease to SIGNAL and others, FOREST, as required by law (as holder of a lease to be transversed by the pipe line), was given actual notice by TRANSCO of the proposed location of its pipe line across Block 106. There is no evidence that FOREST did or did not notify SIGNAL of receipt of notice of the proposed location of TRANSCO's pipe line, or its subsequent existence across Block 106.

**3.**

The third party defendants, other than FOREST, did not acquire their interest in the lease and the proposed well until after TRANSCO had completed construction of its pipe line across Block 106 and, accordingly, they were not given notice by TRANSCO of the proposed location of the pipe line.

**4.**

At all times material hereto ODECO and third party defendants SIGNAL, FOREST and LL&E, had in their possession small scale maps showing the general location of the pipe line across Block 106. Information as to its exact location was a matter of public record and readily obtainable from the Bureau of Land Management of the Department of the Interior, the Louisiana Department of Conservation or TRANSCO, as well as from other sources.

**5.**

Under its contract with ODECO, SIGNAL undertook the following obligations: surveying, marking and/or buoying the well site; obtaining necessary permits, etc., incident to the drilling of the well; providing competent surveyors to survey the drilling barge onto the buoyed well site; and to provide tugs to move the barge to the new location and maneuver her into position.

**6.**

The contract between SIGNAL (Company) and ODECO (Contractor) contained the following commitment regarding insurance to be provided:

"Article 3.3(i):

"To protect Company against liability for damage * * * to property * * * of any person * * * arising in any way out of, in connection with or resulting from the work provided for hereunder * * * Contractor shall, during the progress of the work and throughout the term of this Contract, carry and maintain, at its sole expense, in reliable insur-

ance companies acceptable to Company * * * the minimum insurance coverages set forth in Exhibit B, annexed hereto and made a part of this Contract. * * * "[1]

Paragraph E of Exhibit B to the contract contained the following indemnity agreement:

"Contractor shall indemnify and hold harmless Company and its co-lessees from damages and liabilities of every kind arising out of or being incident to the operations of Contractor hereunder and resulting from the negligence or willful misconduct of Contractor or its officers, agents or employees. Contractor shall furnish Company with certificates evidencing coverage insuring this hold harmless agreement * * *. Such insurance shall contain an agreement whereby the insurer waives its right of subrogation against Company and its co-lessees."

**7.**

Prior to January 6, 1966, SIGNAL had drilled two wells in Block 106, the well involved in this litigation being well No. 3. The desired location for well No. 3 was fixed by SIGNAL's exploration department, on the basis of geological information and other data obtained by it, and that department submitted its recommendation for the location of well No. 3 to SIGNAL's co-lessees under the Operating Agreement, all of whom approved it. No one acting on behalf of SIGNAL made any check as to the existence or location of any underwater pipe lines or other underwater obstructions in the area of the site of proposed well No. 3. So far as the evidence reveals, none of SIGNAL's co-lessees made any such check before approving the proposed location.

**8.**

Except as hereinafter noted as regards questions asked by Mr. Vorenkamp, no one acting on behalf of ODECO made any kind of check or inquiry as to

---

1. Omission of irrelevant portion of text indicated by ellipses.

the existence or location of any underwater pipe lines or other underwater obstructions in the proposed area of well No. 3, even though the exact location of proposed well No. 3 within Block 106 was clearly set forth in the contract of October 29, 1965, between SIGNAL and ODECO.

9.

Surveyors, Inc. was engaged by and on behalf of SIGNAL to survey, mark and/or buoy the exact location of the proposed well, and to assist in surveying the barge onto that exact location. Surveyors was the agent and servant of SIGNAL in performing all of these duties and was not the agent, servant or employee of ODECO.

10.

Surveyors buoyed the proposed well location in virtually the precise spot called for in the contract, and thereafter surveyed in the barge to a position which would place its drilling slot within a distance of approximately 50 feet of the exact spot, a variation entirely acceptable to, and approved by, SIGNAL before the barge was submerged.

Accordingly, the Court finds that ODECO did, for all practical purposes, submerge the Mr. Charlie in the exact position called for in the contract.

11.

The Court finds that Vorenkamp was in charge (master) of the Mr. Charlie during her movement to the well site and while she was being submerged and, thus, responsible for the barge's navigation as such.

12.

Prior to the time that the Mr. Charlie started moving to Block 106, Vorenkamp knew of the existence of a gas pipe line running through Block 106 and that the well site to which the Mr. Charlie was being moved was within that block.

13.

Although Vorenkamp did not know the exact location of the well site within Block 106, before submerging the barge he readily could have ascertained, either from information on board or from his shore office, the precise location of the well site within Block 106.

14.

At or about the time the barge arrived on location, Vorenkamp, realizing the existence of a pipe line running somewhere through Block 106, asked Perrin Powell, Surveyors' party chief who was on board the Mr. Charlie, whether Powell knew of any underwater pipe lines or obstructions in that area. Powell advised him that "he did not know of any". Vorenkamp then directed Powell to inquire of one Hoffpauir, SIGNAL's tool pusher who was on board the Mr. Charlie, as to whether Hoffpauir knew of any pipe lines in the area. Hoffpauir's reply (relayed to Vorenkamp by Powell) was "I know of none". In spite of these equivocal replies to his inquiries, Vorenkamp made no further efforts to more definitely ascertain whether the pipe line running through Block 106 was in the immediate area where the barge was to be submerged.

15.

SIGNAL selected the location for the site of well No. 3 in Block 106, and did all original planning for the well. The precise location of well No. 3 was selected by SIGNAL sometime prior to the execution of the contract between SIGNAL and ODECO, as evidenced by the fact that the exact location of the well was specifically set forth in the contract. Accordingly, SIGNAL planned and selected the precise location where well No. 3 ultimately was drilled, without making any check as to the existence of pipe lines or other obstructions within that area.

CONCLUSIONS OF LAW

1.

This Court has jurisdiction of this action as an admiralty and maritime claim, and venue is properly laid in the Eastern District of Louisiana.

### 2.

TRANSCO's gas pipe line was properly laid, in accordance with proper permits, and TRANSCO was not guilty of any fault or neglect which in any manner contributed to the damage sustained by its pipe line.

### 3.

Since the planning of well No. 3 and the selection of its site were matters left to the exclusive determination of SIGNAL under the terms of the Operating Agreement, the Court concludes that the parties to that agreement, other than SIGNAL, were justified in relying on SIGNAL to make careful check for any underwater obstructions which might render that site unsafe or improper. We find no negligence on the part of TGE, D&M, FOREST, LL&E, EXCHANGE, AMERADA or PRESTON which in any way caused or contributed to this accident so as to render any of those party defendants liable directly to either TRANSCO or ODECO.

### 4.

Notwithstanding, under the terms of the Operating Agreement, each of the parties thereto agreed to prorate among themselves (on percentages clearly set forth therein) the manner in which any liability of SIGNAL, as Operator, to third parties should be borne. Accordingly, as to any sum for which SIGNAL may be held liable to either TRANSCO and/or ODECO, SIGNAL has the right, under the terms of the Operating Agreement, to recoup from each of the other parties thereto their pro-rata share of such liability.

### 5.

SIGNAL was negligent in the planning, as distinguished from the operations (later performed under the contract with ODECO) stage of this well, in that in selecting and precising the location of the proposed well SIGNAL negligently failed to make any check whatsoever as to the existence and/or location of TRANSCO's (or any other)

pipe line within the area. SIGNAL selected a site in complete disregard of the vested rights of parties not privy to either its contract with ODECO or the Operating Agreement. Such negligence was a proximate cause of TRANSCO's damages and SIGNAL is directly liable, under the pleadings and proof, to TRANSCO for the latter's provable damages. Further, SIGNAL is liable to ODECO for any sums ODECO is required to pay TRANSCO on behalf of itself (ODECO) and its barge, or either of them, under the provisions of the judgment hereinafter provided for.

### 6.

Where (as here) a moving vessel (the Mr. Charlie) collides with a fixed object (TRANSCO's pipe line) there is a presumption of negligence or fault on the part of the moving vessel. Without question, the presumption of negligence on the part of the Mr. Charlie for hitting the pipe line has been validly sustained; the very fact that the collision occurred placed the burden upon ODECO (as her claimant-owner and operator) to show that the vessel, and those in charge of her navigation, were without fault. Vorenkamp, her master, failed to make adequate check regarding the existence and location of TRANSCO's pipe line in the immediate vicinity of the well site. Actually, he navigated his vessel in accordance with advice and instructions given him by SIGNAL and, clearly, such advice and instructions (to set the barge down at the particular location) were most imprudent.

Vorenkamp chose to rely on SIGNAL's imprudent advice and instructions rather than to make his own careful, independent check, placing SIGNAL somewhat in the position of a pilot who advises the master of a vessel as to the proper course through which to maneuver his vessel. A master is in command of his vessel at all times and, therefore, may elect to follow the instructions given by the pilot, or refuse to do so and act upon his own knowledge and infor-

mation. If the master elects to follow advice or instruction given by the pilot, and that advice later proves to be erroneous or negligent, the vessel is nevertheless liable *"in rem"* for damages resulting from its collision with another vessel or fixed object.

Accordingly, the Court finds that ODECO (as claimant-owner) has failed to rebut the presumption that its vessel was at fault and that Vorenkamp, her master who was in charge of her navigation, was negligent in failing to make further, more exhaustive inquiry than he did regarding the existence of TRANSCO's pipe line at or near the drilling site. Such negligence on the part of the Mr. Charlie and those in charge of her operation contributed to causing her to be submerged onto TRANSCO's pipe line, resulting in damage to the latter.

### 7.

 Vorenkamp's negligence in failing to make more exhaustive inquiry than he did regarding the existence or non-existence of pipe lines in the area, and/or in failing to conceive the error in the instructions given him by SIGNAL, were minor in nature, whereas the negligence of SIGNAL was major in nature. Accordingly, the Court, under the major-minor fault doctrine, concludes that the negligence of SIGNAL was such as to give ODECO, claimant-owner of the Mr. Charlie, full right of recovery over against SIGNAL for any liability of ODECO or the Mr. Charlie, *in rem*, to TRANSCO, unless such right to recover over against SIGNAL is altered by the terms of the indemnity and/or insurance provisions contained in the contract between ODECO and SIGNAL. The effect of these provisions of the contract on ODECO's right to recover over are discussed hereinafter.

### 8.

 Turning to the effect of the indemnity provisions contained in the contract between SIGNAL and ODECO (paragraph E of Exhibit B thereto),

ODECO agreed to indemnify SIGNAL and its co-lessees from damages and liabilities "arising out of or being *incident to the operations of Contractor* hereunder and resulting from the *negligence or willful misconduct of Contractor* or its officers, agents or employees," (emphasis added). The liability of SIGNAL here did not arise out of the operations of the contractor (ODECO) so as to give SIGNAL et al. a right to indemnity from ODECO. This is a case of planning negligence on the part of SIGNAL, i. e., in the planning of a proper well site. Such planning was not part of ODECO's operation or responsibility. It was SIGNAL's alone.

The indemnity provision clearly reflects the intent on the part of ODECO to indemnify SIGNAL *only* for liabilities of SIGNAL *arising out of ODECO's operations hereunder and resulting from the negligent conduct of ODECO*, (emphasis added). The indemnity clause specifies "negligence or willful misconduct" of contractor (ODECO) and these words would not indicate any intent of the parties to require ODECO to indemnify SIGNAL for ODECO's negligence in relying upon SIGNAL to properly plan the well location. The operations of Contractor (ODECO) did not commence (insofar as they appertain to the indemnity clause) until the barge had been properly positioned over the precise spot designated by SIGNAL and submerged thereon in the normal manner. By the time these events had occurred the damage to plaintiff's pipe line had also occurred.

 SIGNAL prepared the contract, including the indemnity provisions, and the latter reflect no intent of the parties to require ODECO to indemnify SIGNAL for damages resulting from SIGNAL's negligence. Indeed, if it had been SIGNAL's intent to provide for indemnity despite negligence on its part, it would have been a very simple matter to do so. However, such was not done and the contract must be construed against the party who drafted it, SIG-

NAL.[2] Therefore, SIGNAL is not entitled to indemnity from ODECO under the terms of the indemnity provision.

### 9.

Article 3.3(i) of the contract dealing with insurance coverages to be provided by ODECO presents a more difficult question. The insurance which ODECO agreed by the contract to provide for the protection of SIGNAL, was such as would protect SIGNAL from liability for damage to property of any person arising out of, or incident to, the operations of ODECO.

However, no insurance company is a party to this litigation and, so far as the record reveals, there has been no breach on the part of ODECO of its duty to provide the insurance coverages called for in Article 3.3(i). Further, the record is silent as to whether or not SIGNAL ever made claim against the Underwriters issuing the policies obtained by ODECO under the provisions of Article 3.3(i), or ever requested such Underwriters to defend SIGNAL against the claim asserted by TRANSCO. The Court is, therefore, of the opinion that it does not now have before it the question of whether or not the Underwriters issuing the coverages called for under Article 3.3(i) are liable to SIGNAL for the damages ultimately awarded to TRANSCO from SIGNAL, as opposed to the possible uninsured liability of SIGNAL for such damages, or the potential liability of other Underwriters independently selected by SIGNAL.

### 10.

Since the right of TRANSCO to recover its provable damages from one or more of the defendants in this litigation has never been seriously questioned, it is apparent that TRANSCO has been required to await recovery of its damages from the defendants held liable herein only because of the dispute between said defendants as to the party or parties who might ultimately be liable to TRANSCO for its damages. Accordingly, TRANSCO is entitled to recover its provable damages from SIGNAL and ODECO (as claimant-owner of the Drilling Barge Mr. Charlie) together with interest on said damages, at the rate of five per centum (5%) per annum, from the date that it made payment for the cost of repairs to its pipe line until payment of the judgment entered herein.

### 11.

The drilling/re-work contract executed by and between SIGNAL as "Company" and ODECO as "Contractor" was and is a duly executed, valid and subsisting agreement, enforceable according to its terms.

Let judgment be entered in favor of Transcontinental Gas Pipe Line Corporation and against Signal Oil and Gas Company and against the Drilling Barge Mr. Charlie, *in rem,* jointly and severally, for the provable damages established by TRANSCO, plus interest on such sum from the date of payment of repairs to its pipe line until payment of said judgment, together with all costs of court.

Let judgment be entered over in favor of Ocean Drilling and Exploration Company, as claimant-owner of the Drilling Barge Mr. Charlie, and against Signal Oil and Gas Company for any sums required to be paid by ODECO and/or the Mr. Charlie to TRANSCO under the provisions of this judgment.

Let judgment be entered in favor of third party defendants Forest Oil Corporation, Louisiana Land and Exploration Company, Exchange Oil and Gas Company, Amerada Petroleum Corporation, Preston Oil Company, Texas Gas

2. Halliburton Oil Well Cement Company v. Paulk, 180 F.2d 79 (CA 5–1950); James F. O'Neil Company, Inc. v. United States Fidelity and Guaranty Company, 381 F.2d 783 (CA 5–1967); Grigsby v. Coastal Marine Service of Texas, 235 F.Supp. 97 (WD La.–1964); Mills v. Fidelity and Casualty Company of New York, 226 F. Supp. 786 (WD La.–1964); Despaux v. The California Company, 286 F.Supp. 558 (ED La.–1968).

Exploration Corporation and Dorn & Miller, dismissing, with prejudice, the complaint of TRANSCO, and the third party complaint of ODECO, against said third party defendants, and decreeing that these third party defendants recover their costs from ODECO and SIGNAL, jointly and severally.

Let judgment be entered in favor of Signal Oil and Gas Company against each of said other third party defendants for that portion of the amounts required to be paid by SIGNAL under the provisions of the judgment herein which each such third party defendant has agreed to pay under the terms of the Operating Agreement.

Counsel for TRANSCO will prepare and submit appropriate Interlocutory Decree to accomplish the above within ten (10) days of entry of these findings of fact and conclusions of law.

If the parties hereto are unable to agree upon the quantum of damages sustained by TRANSCO within sixty (60) days from the date of entry of the Interlocutory Decree, the Court will appoint a Commissioner to hear evidence on, and determine the amount of, damages sustained by TRANSCO.