Richard O. **ALBA**

v.

**PELICAN MARINE DIVERS,
INC., et al.**

Civ. A. No. 72–2146.

United States District Court,
E. D. Louisiana.

March 19, 1975.

Gothard J. Reck, Darryl J. Tschirn, A Professional Law Corp., Metairie, La., for plaintiff.

Lloyd C. Malancon, McLoughlin, Barranger, Provosty & Melancon, New Orleans, La., for Chevron Oil Co. and Fireman's Fund Ins. Co.

Robert A. Vosbein, Adams & Reese, New Orleans, La., for Chevron Oil Co. and Aetna Casualty & Surety Co.

Felicien P. Lozes, Drury, Lozes & Curry, New Orleans, La., for Employers Surplus Lines Ins. Co.

Edward J. Koehl, Jr., Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for Liberty Mut. Ins. Co.

James H. Roussel, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, La., for Corinth Rentals, Inc., Offshore Logistics, Inc., Offshore General, Inc. and Steamship Mutual Underwriting Assn., Ltd.

William A. Porteous, III, Porteous, Toledano, Hainkel & Johnson, New Orleans, La., for Market Ins. Co.

Robert E. Leake, Jr., Hammett, Leake, Hammett, Hayne & Hulse, New Orleans, La., for Canadian Universal Ins. Co.

BOYLE, District Judge:

After a jury trial of plaintiff's claims against Chevron Oil Company (Chevron) for negligence under the General Mari-

time Law, a verdict awarding plaintiff $70,000 damages, reduced by 35% for contributory negligence of the plaintiff, was returned.

The claims of Chevron for recovery over against Pelican Marine Divers, Inc. (Pelican) and its insurer, Canadian Universal Insurance Company (Canadian) and also against Corinth Rentals, Inc. (Corinth), Offshore General, Inc. (Offshore) and their insurer, Steamship Mutual Underwriting Association, Ltd. (Steamship) were tried to the Court and the matter was taken under submission.[1]

The evidence establishes that the plaintiff, Richard Alba (Alba), a diver, was employed by Pelican which had contracted to provide diving services (including personnel and equipment) to Chevron. On March 14, 1970, the M/V CORINTH, which was being operated by Chevron to control an oil well fire in the Gulf of Mexico, picked up a line in her starboard wheel and rudder which completely disabled the vessel. At that time the vessel's engines were shut down, and the M/V CORINTH was tied to an oil collecting barge to await the arrival of a diver to cut the line from her wheel.

Plaintiff was dispatched aboard the M/V STAR TIDE to cut the line from the wheel on the CORINTH. When he arrived at the scene, plaintiff complained to Chevron's superintendent, Michael Malarky, that the Gulf was too rough to dive safely. Despite plaintiff's protest, Malarky ordered plaintiff to make the dive. Plaintiff then dived from the STAR TIDE into the water and commenced removing the rope from the wheel and the rudder of the CORINTH. During this operation, plaintiff sustained an injury to his left hand. At the time of plaintiff's accident, the engines of the CORINTH were shut down and the evidence is clear that no one aboard the CORINTH caused plaintiff's injuries.

Chevron claims that it is entitled to recover over against Pelican under the provisions of its contract with Pelican, the pertinent portions of which read as follows:

Contractor (Pelican) agrees to perform the work as an independent contractor and not as an employee of Company (Chevron); . . .

Contractor (Pelican) agrees to defend and hold Company (Chevron) indemnified and harmless from and against any loss, expense, claim and demand for:

(a) Injury to or death of Contractor's (Pelican) employees or for damage to or loss of Contractor's (Pelican) property in any way arising out of or connected with the performance by Contractor (Pelican) hereunder; and; . . .

Company (Chevron) shall have the right, at its option, to participate in the defense of any such suit without relieving Contractor (Pelican) of any obligation hereunder.[2] (Parentheses added).

Chevron contends that by letters of August 18, 1972[3] it proferred its defense and claim for indemnity to Pelican and Canadian under the provisions of a written Service Order and Agreement which contained indemnity agreements, Pelican's liability under which were insured by Canadian in the latter's liability insurance policy, which included contractual indemnity liability coverage. Chevron contends that on August 12, 1974 it was compelled and forced to defend and protect itself against the allegations of the plaintiff because of Pelican's failure to do so and, therefore, it is entitled, in addition to recovery of the amount

---

1. Chevron voluntarily dismissed its third party claims against Liberty Mutual Insurance Company, Market Insurance Company and Employers Surplus Lines Insurance Company with prejudice. Chevron's claim against Offshore Logistics, Inc. was dismissed in consideration of Offshore General's stipulation that it would be responsible for any judgment rendered against Offshore Logistics, Inc.

2. See Chevron Exhibits C and D, pp. 24 and 26.

3. Chevron Exhibit I.

awarded plaintiff, to reasonable legal fees, costs and expenses incurred in the defense of plaintiff's action.

Chevron claims that it is also entitled to similar recoveries from Offshore, Corinth and Steamship under the provisions of charter and operating agreements for the M/V CORINTH on which a protection and indemnity insurance policy was issued by Steamship, wherein Chevron was named as an additional assured.[4] The pertinent portions of the charter and operating agreements on pages 30, 33 and 39 read as follows:

> OWNER (Corinth) shall maintain, or cause to be maintained, a Marine Hull and Machinery Policy of Insurance covering the value of the vessel M/V CORINTH in the amount of $185,000.00 value of the vessel, and Marine Protection and Indemnity Insurance in the same amount. These policies shall be in form and with company as approved by the CHARTERER (Chevron) will be named with (Corinth) shall furnish to CHARTERER (Chevron) originals or certified copies of all policies. CHARTERER (Chevron) will be named with OWNER (Corinth) as an assured in all policies. All expense, of the insurance coverage obtained under the provisions of this section and all deductibles shall be for OWNER'S (Corinth's) account.

> OPERATOR (Offshore) agrees that it will hold CHARTERER (Chevron) harmless from any and all claims or demands made against CHARTERER (Chevron), or the vessel which may be based on the acts of OPERATOR (Offshore), or its employees or subcontractors, while performing the work herein undertaken. (Parentheses added).

Chevron points out that in Endorsement No. 4 on page 49 of Exhibit H (Steamship's policy issued to Offshore), Chevron Oil Company is considered, intended and named as an additional insured for the operations and use of the M/V CORINTH.[5] Chevron contends that on October 9, 1972 and on August 30, 1973, Corinth, Offshore and Steamship accepted the tendered defense and indemnity of Chevron and proceeded therewith until July 24, 1974, at which time they repudiated their obligations,[6] compelling it to defend and protect itself in the action. Because of the alleged breach of Corinth, Offshore and Steamship of their obligations to defend it, Chevron has incurred legal fees and expenses proximately caused by the said breach.

Chevron further contends that it is entitled to statutory penalties pursuant to L.S.A. R.S. 22:658 against Steamship for its failure to defend and protect Chevron as an insured.

In defense of Chevron's claims against them, Pelican and Canadian contend, and we agree, that there was no evidence which established that anyone other than Chevron's employee, Malarky, and Pelican's employee, Alba, was negligent.[7] Pelican and Canadian contend that Chevron's contract with Pelican does not purport to require Pelican to indemnify Chevron against the results of Chevron's own negligence. They further contend that the contributory negligence of Pelican's employee, Alba, is not imputable to Pelican in order to constitute negligence on the part of Pelican which could support a claim by Chevron for indemnity from Pelican for the judgment in favor

---

4. Chevron Exhibits F, G, H.

5. The latter vessel is listed in Endorsement No. 5 on the next page (50) of the P & I insurance covered by Steamship.

6. Chevron Exhibit I.

7. The jury found Chevron negligent and Alba contributorily negligent. The finding of negligence on the part of Chevron was based upon Malarky's ordering plaintiff to make the dive, despite protests by plaintiff. The testimony of plaintiff Alba and his tender, Gambino, about the conversation which took place before the dive between plaintiff and Malarky was uncontradicted by Malarky, who testified that he could not recall the conversation.

of Alba against Chevron for its negligence. Canadian further contends that it was not obligated to defend Chevron from the claims of Alba because it only insured Pelican and since Pelican owes no indemnity obligation to Chevron, it owed no indemnity defense, nor the cost thereof, to Chevron.[8]

■■■ We agree with defendants Pelican and Canadian that they do not owe indemnity to Chevron under the terms of Pelican's agreement with Chevron. The service order and agreement, which was written and provided by Chevron, does not provide that Pelican will indemnify Chevron for liability imposed upon Chevron which is based upon Chevron's negligence. As Judge Brown stated in Batson-Cook Company v. Industrial Steel Erectors, 257 F.2d 410 at 412 (5 Cir. 1958)

". . . unless the intention is unequivocally expressed in the plainest of words, the law will consider that the parties did not undertake to indemnify one against the consequences of his own negligence."

See also Cole v. Chevron Oil Company, 477 F.2d 361, 368 (5 Cir. 1973); Transcontinental Gas Pipe L. Co. v. Mobile Drilling Barge "Mr. Charlie", 424 F.2d 684, 691 (5 Cir. 1970) and Grigsby v. Coastal Marine Service of Texas, Inc., 412 F.2d 1011, 1039 (5 Cir. 1969). The negligence of Pelican's employee, Alba, which the jury found contributed to his injury is not imputable to Pelican in order to constitute negligence on the part of Pelican which could support a claim by Chevron for indemnity. Drewery v. Daspit Bros. Marine Divers, Inc., 317 F.2d 425 (5 Cir. 1963); Loffland Brothers Co. v. Roberts, 386 F.2d 540 (5 Cir. 1967), cert. denied, 389 U.S. 1040, 88 S. Ct. 778, 19 L.Ed.2d 830 (1968). We conclude, therefore, that Pelican does not owe indemnity to Chevron for the damages recovered by plaintiff against Chevron.

■■ Pelican and Canadian did owe Chevron a defense to plaintiff's claims. The agreement between Chevron and Pelican expressly provides that "Contractor (Pelican) agrees *to defend* . . . ." (emphasis ours) in the circumstances presented in this case. That obligation is covered by Canadian's policy. Therefore, Canadian, too, would be liable to Chevron for its cost of defending against Pelican's employee's claims.

Canadian's reliance on Despaux v. California Company, 286 F.Supp. 558 (E. D.La.1968) is misplaced. The contract between the parties set out on page 559 provides, inter alia,

"Contractor (Louisiana Casing) agrees to hold Company (Chevron) indemnified and harmless from and against any loss, expense, claim or demand for: . . ."

Unlike the contract between Chevron and Pelican, in *Despaux* the Contractor did not agree to defend the indemnitee. The court there found no indemnity was due the indemnitee and refused to allow the cost of defense sought.

■ Turning now to Chevron's claim against Corinth, Offshore and Steamship, they contend, and we agree, that the evidence is clear that no one aboard the CORINTH was negligent and that the plaintiff did not recover on the basis of the vessel's unseaworthiness. The obligation of Corinth, Offshore and Steamship to indemnify Chevron must be found in the written agreements between the parties. Under the bareboat charter, Corinth had the obligation to furnish marine protection and indemnity insurance to Chevron with Chevron named as an assured under the policy. There is no evidence and Chevron has not contended that it did not approve

---

8. Canadian's attorney, in a letter to the Court following a conference with the Court attended also by counsel for Chevron, concedes that if Pelican is found to owe Chevron the cost of its defense, of plaintiff's claims, such liability is within the coverage of its policy issued to Pelican. See Record Document No. 127.

and accept the policy issued by Steamship. We conclude that the policy provided by Steamship was accepted by Chevron.

The bareboat charter of the CORINTH to Chevron contained no indemnity provisions. It did require that Chevron be named as an insured under the P & I policy covering the CORINTH issued to Offshore and Chevron was so included as a named insured therein.

■ The policy contains the following exclusion in Endorsement No. 5 which clearly shows that Chevron's loss is not covered under the policy:

C—Type of Coverage: Protection and Indemnity risk as per Steamship Mutual form excluding cargo, divers, diver's assistants and their equipment whilst diving.[9]

The plain language of the exclusion requires that we hold that the policy does not cover the liability of Chevron found by the jury in this case.

■ We also hold that the indemnity agreement on page 39 of the operating agreement does not require Offshore to indemnify Chevron. That provision reads:

OPERATOR (Offshore) agrees that it will hold CHARTERER (Chevron) harmless from any and all claims or demands made against CHARTERER (Chevron), or the vessel *which may be based on the acts of OPERATOR* (Offshore) *or its employees, or subcontractors,* while performing the work herein undertaken. (Emphasis and parentheses ours).[10]

There was no evidence that any negligence of Offshore, its employees or its subcontractors contributed to plaintiff's injury. Offshore owes Chevron no indemnity for the damages recovered by plaintiff or the cost of Chevron's defense of plaintiff's claim. Despaux v. California Company, supra.

We have previously found that Steamship's policy naming Chevron as an additional assured excluded losses suffered by divers. Because we find that coverage for the loss suffered by plaintiff was excluded by the Steamship policy, Steamship has no obligation to Chevron to indemnify it for plaintiff's recovery.

Nor is Steamship liable to Chevron for the cost of its defense of plaintiff's claims.

■ The Steamship policy is an indemnity policy rather than a liability policy. See Cucurillo v. American Steamship Mutual P & I Assoc., Inc., 1969 AMC 2334 (N.Y.S.Ct.1969), *citing* Couch on Insurance, 2d § 44: 4 at p. 522; Haun v. Guaranty Security Ins. Co., et al., 61 Tenn.App. 137, 453 S.W. 2d 84, 94 (1969), cert. denied (1970). The Steamship policy provides:

(1) The member is protected and indemnified as Shipowner in respect of liabilities and expenses which he shall have become liable to pay and shall have in fact paid in respect of the vessel named herein for the following:

\* \* \* \* \* \*

(m) Costs when incurred with the Association's approval, of investigating and/or defending any claim or suit against the Member based on a *liability* or *an alleged liability* of the Member *covered* by this insurance shall be payable by the Association . . .

See Offshore Exhibit No. 1, pp. 1 and 2.

The policy language clearly states that in order to be afforded protection and indemnity under the policy that Chevron must become liable as shipowner, for a risk which was covered by the Steamship policy.

■ Unlike the usual liability policy, the indemnity policy issued by Steamship contains no stipulation by which the insurer obligates itself to defend the insured against all actions brought against him even though such suits are groundless, false, or fraudulent. *See* 14

---

9. See Offshore #1.

10. See Chevron Exhibit G.

Couch on Insurance, § 51:50 at pp. 543, 544. Even though Steamship at one time assumed the defense of Chevron,[11] we hold that its later refusal to proceed with the defense of plaintiff's claims was justified since the policy specifically excludes coverage for plaintiff's losses incurred "whilst diving." [12]

■ Chevron alternatively claims that because its defense was twice undertaken, and twice abandoned by Offshore, Corinth and Steamship, the latter are now estopped to deny Chevron is due the cost of its defense to plaintiff's claims. To prevail on this theory Chevron bears the burden of showing that it was represented, that its defense was unqualifiedly accepted, reliance thereon and prejudice as a result of Offshore, Corinth and Steamship's withdrawal from its defense. *See* Nat Harrison Associates, Inc. v. Gulf States Utilities, 491 F.2d 578, 584 (5 Cir. 1974); Bank of Ville Platte, Inc. v. Vidrine, 255 So.2d 140 (La.App. 3, 1971).

■ Chevron's claim of estoppel must fall. Acceptance of its defense was qualified and there was no showing of prejudice to Chevron as a result of withdrawal of the defense twice undertaken by Offshore, Corinth and Steamship. Furthermore, to apply estoppel would in effect extend coverage to an excluded risk, which is impermissible. Carnes & Co. v. Employers Liability Assurance Co., 101 F.2d 739, 742 (5 Cir. 1939).

■ Chevron contends that exclusion "C" of Endorsement No. 5 of the Steamship policy does not apply because each vessel under the Steamship policy is separately covered and that since plaintiff dived from the M/V STAR TIDE, the exclusion would not apply to Chevron.[13] We find that the exclusion urged by Steamship covers the facts presented by this case. There is no qualification to the exclusion that the plaintiff must have dived from the CORINTH. The exclusion specifically states that it excludes risks to "divers whilst diving." Plaintiff was injured attending the CORINTH whilst diving and we find it irrelevant that plaintiff dived from a vessel other than the CORINTH.

Since we have found that Steamship had no liability to Chevron under its policy, we find that Chevron's claim for penalties pursuant to L.S.A.-R.S. 22:658 is without merit.

Having reached the foregoing conclusions, we find it unnecessary to rule on the motions for summary judgment by Chevron, and the motions for involuntary dismissal made by Canadian, Offshore, Corinth and Steamship.

Accordingly, Chevron's claims for indemnity against Pelican Marine Divers, Inc., Canadian Universal Insurance Company, Offshore General Services, Inc., Corinth Rentals, Inc. and Steamship Mutual Underwriting Association should be dismissed.

■ Also before the Court is plaintiff's motion to award him interest on his recovery from the date of his loss, March 14, 1970, and, alternatively from the date of judicial demand, August 11, 1972. This matter lies entirely within the discretion of the Court. 3 Benedict on Admiralty, § 419, pp. 191–192; Sabine Towing Co. v. Brennan, 85 F.2d 478 (5 Cir. 1936); Chagois v. Lykes Bros. S. S. Co., 432 F.2d 388, 395 (5 Cir. 1970), vacated and remanded on other grounds, 404 U.S. 1009, 92 S.Ct. 667, 30 L.Ed.2d 656, remanded to district court, 457 F.2d 343; Canova v. Travelers Ins. Co., 406 F.2d 410 (5 Cir.), cert. denied, 396 U.S. 832, 90 S.Ct. 88, 24 L.Ed.2d 84 (1969). We believe that

---

11. Steamship's assumption of the defense of Chevron was qualified pursuant to the terms and conditions of the policy. See Chevron Exhibit I, pp. 96–97.

12. Even in cases involving *liability policies* where the complaint fails to allege facts which, if established, create liability, the insurer has been held not to owe a defense. Sussman v. American Surety Co., 345 F.2d 679 (5 Cir. 1965); Fidelity & Casualty Co. v. Riley, 380 F.2d 153 (5 Cir. 1967).

13. No contention is made that the STAR TIDE is covered by the Steamship policy.

**962**

a denial of plaintiff's motion would not be an abuse of our discretion.

Having concluded that Pelican and Canadian owe Chevron the cost of its defense and no evidence thereof from which we could determine the amount which Chevron should recover of Pelican and Canadian having been adduced, we shall hear such evidence on the 24th day of March, 1975, at 10:00 A.M.